Ballin and another vs. Merchants' Exchange Bank and others.

BALLIN and another, Respondents, vs. MERCHANTS' EXCHANGE BANK and another, imp., Appellants.

BALLIN and another, Respondents, vs. MOSSBACHER and others, imp., Appellants.

*December 13, 1894 — February 5, 1895.*

*Corporations: Insolvency: Sequestration of assets: "Trust fund:" Validity of prior attachments: Fraud: Cross-complaint.*

1. The assets of an insolvent corporation are not a trust fund for the benefit of creditors in such a sense that a creditor knowing of such insolvency cannot acquire a valid lien by attaching the property in a *bona fide* attempt to collect his debt; and a lien so acquired will be protected in a subsequent action to close up the affairs of the corporation and sequestrate its property.

2. In an action by creditors to sequestrate the property of an insolvent corporation, the complaint alleged that attachments levied by other creditors, who were made defendants, were collusive and fraudulent. Some of said defendants in their answer also alleged the same thing in respect to the attachments of the others, which were prior to their own, but did not plead the facts as a counterclaim nor serve their answer upon such other defendants. On the trial the plaintiffs abandoned their claim of fraud and collusion. *Held,* that the defendants alleging fraud were not in a position to litigate that question as against their codefendants. They should have raised the question by a cross-complaint, which their codefendants might have answered.

APPEALS from an order of the superior court of Milwaukee county: R. N. AUSTIN, Judge. *Reversed in part.*

Action under sec. 3216, R. S., for the sequestration of the property of an insolvent trading corporation and the distribution of its assets among its creditors. On the 2d of December, 1889, the J. & E. B. Friend Lace Importing Company, a corporation in Milwaukee, was insolvent, having assets composed of a stock of merchandise worth from $7,000 to $8,000, and accounts of the nominal value of $17,000, and having liabilities considerably in excess of its total assets.

Ballin and another vs. Merchants' Exchange Bank and others.

On that day the defendants and appellants the *Merchants' Exchange Bank* and the *Kalamazoo Knitting Company* (hereafter known as the first class of creditors) levied attachments on the entire stock of goods of the corporation, upon claims aggregating more than the entire value of the stock; and on the same day the corporation, by its officers, made assignments of all said accounts to various other creditors, who are defendants in this action (hereafter known as the second class of creditors), and whose claims aggregate over $8,000. On the 3d of December, 1889, the defendants and appellants *Mossbacher* and others (hereafter known as the third class of creditors) levied attachments on said stock of goods, on claims aggregating more than $6,000.

Afterwards, the plaintiffs in this action obtained judgment against the corporation for $2,048.76, and, upon the return of an execution unsatisfied, commenced this action against the corporation, and all of the said creditors, and the sheriff, who then had possession of the stock of goods under the writ of attachment or under executions issued on the action commenced by the attachment. In their complaint the plaintiffs, after setting forth the facts showing the right to sue, and the insolvency of the corporation, allege, in effect, that all of the said attachments and the assignments of the accounts were collusively and fraudulently made, at the instance and request of the officers of the corporation, with knowledge by all parties of its insolvency, and with intent to give and secure unjust preference over other creditors. The plaintiffs prayed for sequestration of the property of the corporation, and for the appointment of a receiver, and that the attached property be turned over to such receiver, and that the defendants who had received assignments of accounts should account for the same to the receiver.

Upon this complaint an interlocutory order was made, declaring the corporation insolvent, adjudging sequestration of its property, appointing Morris Speiser receiver thereof;

also, requiring the sheriff to surrender to the receiver all the property held by him under the defendants' attachments and executions, and restraining all other proceedings in the attachment actions. This order was appealed from, and affirmed by this court in *Ballin v. Loeb*, 78 Wis. 404. Thereafter, the receiver, under the order of the court, sold the stock of goods and realized the sum of $7,225.

The answer of the first class of creditors admitted the insolvency of the corporation, but denied all collusion or conspiracy to obtain preference, set forth at length their attachment proceedings, and claimed a first lien by virtue thereof on the fund derived from the sale of the stock of goods. No answer by the second class of creditors appears in the printed case. The third class of creditors, in their answer, denied all collusion or conspiracy, and denied knowledge of the insolvency of the corporation when they attached, and claim their attachments to be a first lien on the stock of goods. They also allege a fraudulent conspiracy and combination between the corporation and the first and second classes of creditors, to give them preference over other creditors, by means of collusive attachments and assignments, in fraud of the other creditors of the corporation. This answer is not in the form of a counterclaim or cross-complaint, and was served only on the plaintiffs.

When the action came to trial, the plaintiffs moved for judgment upon the pleadings, and, after having taken the matter under advisement, the trial court made an order providing — *first*, that there should be an equal and ratable distribution of all the property in the hands of the receiver among all the creditors of the corporation who have proven, or who may prove, their claims; *second*, that no preference be allowed, and that all other proceedings by the defendants be enjoined until the further order of the court; *third*, that the action, in so far as it attempts to set aside the assignments of accounts, be dismissed, because the same should be

done in a separate action brought by the sheriff; *fourth*, that the receiver should bring suits against the creditors of the second class to contest the validity of the assignments of accounts, and report the conclusion to the court; *fifth*, that the distribution to creditors be deferred until the conclusion of such suits and the filing of the receiver's report.

In the reciting clauses of this order it is said that the plaintiffs "moved the court for judgment upon the pleadings, records, and facts admitted in open court by all parties; that the corporation known as the J. & E. B. Friend Lace Importing Company, at the date mentioned in the amended complaint, was insolvent, and its insolvency was known by the corporation and the defendants." In a subsequent part of the same order, as afterward amended by the court, it is, however, recited that the third class of creditors, represented by Mr. Bloodgood, objected to the rendering of judgment for the plaintiff on the ground "that the final order of distribution to be entered herein should contain a provision that the defendants were entitled to a preference because they had liens by virtue of their attachments set out in their answer herein, and that the insolvency of said defendant company was not known to said defendants, represented by said attorneys Bloodgood, Bloodgood & Kemper, at the time of the issuing and levying of the attachments by said respective defendants." It is further recited in said order that said third class of creditors "offered to prove that the transaction of levying the attachments was a voluntary assignment of the entire property of the corporation defendant, and was brought about by a conspiracy between the attaching creditors and those taking the assignments, and that one feature of the fraud was that those attachments should not be traversed; another, that there was no legal or equitable ground for those attachments; another, that the property, when seized by the sheriff under attachment, was to be immediately sold under an order from the court, to be granted

under the statute, in order that the corporation defendant, or its officers, might purchase the same; another, that there was a conspiracy to secure debts or claims in which the officers of the corporation were interested,— which offer was considered immaterial."

The first class of creditors, represented by Mr. Flanders, appeal from so much of this order as provides for an equal distribution of property and refuses to allow any preference and enjoins other proceedings by the defendant. The third class of creditors, represented by Mr. Bloodgood, appeal from the whole order.

For the appellants *Merchants' Exchange Bank* and *Kalamazoo Knitting Company* there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *J. G. Flanders.* The property of an insolvent corporation, before proceedings for a sequestration, is not a "trust fund" in the ordinary sense of that term. The term as used in this connection has a limited and special meaning quite distinct from its ordinary signification. *Hospes v. N. W. M. & C. Co.* 48 Minn. 174; *Fogg v. Blair,* 133 U. S. 534, 541; *Hollins v. Brierfield C. & I. Co.* 150 id. 371; *White, P. & P. Mfg. Co. v. Henry B. Pettes Imp. Co.* 30 Fed. Rep. 865; Wait, Insolvent Corp. § 142; 2 Pomeroy Eq. Jur. § 1046. The idea of a trust arises out of the fact that, the property of the corporation being the fund to which alone creditors must trust in their dealings with the corporation, it would be inequitable to permit the corporation to arbitrarily withdraw that fund from their reach. Whether solvent or insolvent, the capital stock and property of the corporation is a trust fund created for the payment of the debts of the corporation, in the sense above explained. *Adler v. Milwaukee P. B. Mfg. Co.* 13 Wis. 57; *Nazro v. Merchants' Mut. Ins. Co.* 14 id. 295, 302; Wait, Insolvent Corp. § 142; 2 Morawetz, Priv. Corp. (2d ed.), §§ 780, 787; *Union Nat. Bank v. Douglas,* 1 McCrary, 86, 96; *Breene v. Merchants' &*

*M. Bank,* 11 Colo. 97. It is not until sequestration proceedings are commenced that the property becomes impressed with a trust in the full sense of the term, and the ordinary remedies of creditors are suspended. *Breene v. Merchants' & M. Bank,* 11 Colo. 97; *Hollins v. Brierfield C. & I. Co.* 150 U. S. 371; *Roseboom v. Whittaker,* 132 Ill. 89; *Adler v. Milwaukee P. B. Mfg. Co.* 13 Wis. 57; *Nazro v. Merchants' Mut. Ins. Co.* 14 id. 295; *Varnum v. Hart,* 119 N. Y. 101; *Throop v. Hatch L. Co.* 125 id. 530; *Hill v. Knickerbocker E. L. & P. Co.* 18 N. Y. Supp. 813; *Comm. Nat. Bank v. Burch,* 40 Ill. App. 505. A mistaken interpretation of the decision upon the former appeal in this case (78 Wis. 404) seems to have given some currency to the belief that a diligent creditor cannot acquire a lien by attachment or execution upon the assets of an insolvent corporation. The interpretation of that decision, however, in more recent cases leaves no doubt that such was not its meaning and intent. *Garden City B. & T. Co. v. Geilfuss,* 86 Wis. 612; *Ford v. Plankinton Bank,* 87 id. 363. The appellants having acquired valid liens upon the property of the corporation by the levies of their attachments and executions, the property in the hands of the receiver is impressed with those liens, and they must be recognized in the distribution of said property. *Garden City B. & T. Co. v. Geilfuss,* 86 Wis. 612; *Ford v. Plankinton Bank,* 87 id. 363.

For the appellants *Mossbacher* and others there were briefs by *Bloodgood, Bloodgood & Kemper,* attorneys, and *Francis Bloodgood,* of counsel, and oral argument by *Francis Bloodgood.*

For the respondents there was a brief by *Orren T. Williams,* attorney, and *Miller, Noyes & Miller,* of counsel, and oral argument by *Geo. P. Miller* and *Mr. Williams.* The statutes providing for sequestration, etc., were intended to secure an equal distribution of the property of an insolvent corporation among its honest creditors, and for that purpose to

divest the liens of any individual creditors acquired after it
became insolvent and with full knowledge of such insolvency.
R. S. secs. 3217, 3225, 3227, 3228, 3245; *Ballin v. Loeb,* 78
Wis. 404; *Ballston Spa Bank v. Marine Bank,* 18 Wis. 490;
*Pierce v. Milwaukee C. Co.* 38 id. 253; *Powers v. C. H. Ham-
ilton P. Co.* 60 id. 23; *Adler v. Milwaukee P. B. Mfg. Co.* 13
id. 57; *First Nat. Bank v. Knowles,* 67 id. 373; *In re Water-
bury,* 8 Paige, 380; *Ford v. Plankinton Bank,* 87 Wis. 371,
372. The provision of sec. 3245 for the payment of the
"legal and equitable liens" upon the property in the "order
of their priority" clearly must refer to such liens as had
been given or acquired before the corporation became in-
solvent. The policy of the law of this state, both statute
and judicial, has been uniformly opposed to preferences and
favorable to equity. *Conlee L. Co. v. Ripon L. & M. Co.* 66
Wis. 481; R. S. secs. 1693, 1719, 1720; *Sleeper v. Goodwin,*
67 Wis. 578; *Lang v. Simmons,* 64 id. 525; *Campfield v.
Lang,* 25 Fed. Rep. 128; *Norwegian Plow Co. v. Hanthorn,*
71 Wis. 539; *Baum v. Bosworth,* 68 id. 196; *Vernon v. Upson,*
60 id. 418; *Willis v. Bremner,* id. 622. The appellants did
not acquire liens by the attachment proceedings against the
property of the insolvent corporation, because the property
seized was a trust fund, of which the directors of the corpo-
ration were trustees, and of which all the creditors were
beneficiaries. *Ford v. Plankinton Bank,* 87 Wis. 371; *Bal-
lin v. Loeb,* 78 id. 404; *First Nat. Bank v. Knowles,* 67 id.
387; *Haywood v. Lincoln L. Co.* 64 id. 646; *Powers v. C. H.
Hamilton P. Co.* 60 id. 28; *Adler v. Milwaukee P. B. Mfg.
Co.* 13 id. 60; 27 Am. Law Review, 846; *Lyons–Thomas H.
Co. v. Perry S. M. Co.* 86 Tex. 143; *Duncomb v. N. Y., L.
& N. R. Co.* 88 N. Y. 1; *Rouse v. Merchants' Nat. Bank,*
46 Ohio St. 493; *Wood v. Drummer,* 3 Mason, 309; *Sanger
v. Upton,* 91 U. S. 56; *Curran v. Ark,* 15 How. 312; *Upton
v. Tribilcock,* 91 U. S. 45; 2 Pom. Eq. Jur. 1046; Taylor,
Priv. Corp. 759; *Hopkins's Appeal,* 90 Pa. St. 76; *Roseboom*

Ballin and another vs. Merchants' Exchange Bank and others.

*v. Whittaker*, 132 Ill. 81; 2 Morawetz, Priv. Corp. 803–861; *Lane's Appeal*, 105 Pa. St. 49; *Adams v. Kehlor M. Co.* 35 Fed. Rep. 433.. This matter is *res adjudicata*, because the order now appealed from results necessarily from the former decision in this case. *Ballin v. Loeb*, 78 Wis. 404.

WINSLOW, J.   A creditor of an insolvent corporation, knowing its insolvency, attaches its property, without collusion with the officers of the corporation.   Afterwards, and while the attached property is in the hands of the officer, another creditor obtains judgment and commences an action under sec. 3216, R. S., to close up its affairs and sequestrate its property, making the attaching creditor and the officer parties to the suit.   Can the attaching creditor be deprived of his lien upon the property attached, and be compelled to share equally with all other creditors in the property of the corporation?   This is the single question which is sharply presented in this case.

The complaint charged a fraudulent and collusive attachment by the first class of creditors; and a preliminary order, based on this complaint, requiring the sheriff to surrender the attached property to the receiver, was affirmed by this court. *Ballin v. Loeb*, 78 Wis. 404.   The ultimate rights of the attaching creditors were not determined on that appeal, however; but it was held that they must come into this action for any share of the proceeds of the property, or for any remedy against it.   The effect of that decision was simply to hold that the receiver was entitled to the possession of the property for the purpose of winding up the affairs of the corporation, and that all claims of liens upon the property must be litigated in this action.   On the trial the plaintiffs abandoned all charges of collusion and fraud, and rested solely on the ground of the corporation being insolvent and that the attaching creditors had knowledge of such insolvency when they attached.   And thus the question presents itself,

as first above stated.    Upon this question, the plaintiffs rest-
their case upon the so-called "trust-fund" doctrine, and take
a broad ground that from the moment a trading corporation
becomes insolvent its assets become a trust fund for the
benefit of its creditors, and that no creditor, knowing of its
insolvency, can obtain a valid lien by attachment of any of
the property; and they argue that this doctrine has received
the express or implied sanction of this court.

It must be admitted that there are authorities in other
jurisdictions holding this doctrine to its full extent, but it
certainly has not yet been held by this court that a creditor
of an insolvent corporation may not obtain a valid lien by
attaching its property in a *bona fide* attempt to collect his
debt.    The cases which are principally relied upon by the
plaintiffs as having sanctioned the trust-fund doctrine in this
court are *First Nat. Bank v. Knowles*, 67 Wis. 373; *Hay-
wood v. Lincoln L. Co.* 64 Wis. 639; *Ballin v. Loeb*, 78 Wis.
404; *Ford v. Plankinton Bank*, 87 Wis. 363.    A brief re-
view of the questions actually decided in these cases will be
useful.    In *Haywood v. Lincoln L. Co.*, it was held that direct-
ors of an insolvent corporation could not lawfully convey or
mortgage the corporate property to themselves to secure
their own claims against the corporation.    In *First Nat.
Bank v. Knowles*, it was held that a trust deed of an insolv-
ent manufacturing corporation to secure bonds given to
certain creditors, some of whom were directors of the corpo-
ration, was void because made with the intent to hinder,
delay, and defraud other creditors and because it had the
effect of a fraudulent preference of certain creditors to the
exclusion of all others.    In *Ballin v. Loeb*, it was held (as
previously stated in this opinion) that an attaching creditor
of an insolvent corporation, whose attachment was charged
to have been fraudulent and collusive, must come into this
action and assert his rights to a lien upon the attached prop-
erty.    The same, in principle, was the holding in *Ford v.*

*Plankinton Bank.* In the last-named case it was charged that judgments by confession had been collusively and fraudulently obtained and levies made thereunder; and it was held that the property levied upon must go into the hands of the receiver, and that a creditor must seek and enforce his lien, if any, in the sequestration action. On the other hand, in *Garden City B. & T. Co. v. Geilfuss*, 86 Wis. 612, it was distinctly held that where an insolvent corporation had made a valid assignment for the benefit of its creditors under the statute, such assignment was not superseded or affected by the appointment of a receiver in an action against the corporation under sec. 3216, R. S. We believe the foregoing is a fair statement of the questions actually presented and decided in the cases named, and from this statement it seems very certain that the question here presented has not been foreclosed or decided by this court.

The intangible body known to the law as a corporation must necessarily act by its agents, and these agents are its managing officers. An agent who is handling the funds or property of his principal acts in a trust capacity, and is in a sense a trustee. The managing officers of the corporation are therefore at all times trustees for the corporation and its stockholders. It may also be correctly said that the corporate property in the hands of the receiver is a trust fund for the benefit of creditors, in the sense that it is to be applied to the payment of the corporate creditors before it can be applied for the use or benefit of the stockholders. The plaintiff's contention is broader than this, and is to the effect that when a corporation in fact becomes insolvent, though still doing business, the managing directors thereof become trustees of the corporate property, in the full and complete sense of the term, and can make no disposition of such property to one creditor to the exclusion of others, nor can a creditor acting in good faith acquire a valid lien upon the corporate property by attachment. As to the

first branch of this proposition, to the effect that the directors cannot convey or mortgage the corporate property to a creditor, we are not now concerned, because that question does not arise in this case. The sole question here is whether a diligent creditor, knowing of the corporate insolvency and bringing his attachment proceedings in an honest effort to collect his debt, can acquire a valid lien upon the corporate property, which will be protected upon a subsequent sequestration action. Upon this question we have no hesitation in holding that such a creditor will acquire a valid lien. To hold otherwise is to hold, in effect, that a debt cannot be collected by ordinary processes of law from an insolvent corporation; that the corporation may buy and sell, make contracts, and transact its ordinary business, but that it enjoys a practical immunity from all the laws for the enforcement of its obligations, until some creditor sees fit to commence an action to wind up its affairs. In other words, it may buy property, but cannot be compelled by ordinary processes of law to pay for it; it may contract, but cannot be compelled to perform its contract; it is provided with a shield which becomes, to all intents and purposes, a sword in its hands against the diligent creditor. Certainly no such immunity from the ordinary laws governing the rights of creditors is given it by statute. On the contrary, the statute provides (R. S. sec. 2729) that any creditor may proceed by attachment against the property of his debtor, "whether a natural person or corporation;" and in vain do we look for any exception in the statute law, such as is claimed here. We shall not attempt to ingraft any such exception on the statute by decision. We see no good reason why a trading corporation, so long at least as it deals with others in its ordinary course of business, should not be subject to the ordinary remedies provided by the law for the collection of debts. Its property is certainly not trust property in the sense that it cannot be relied on by its

creditors to respond to the ordinary processes of the law sued out in good faith. The following authorities fully bear out these views, and we cite them as sustaining the point now decided, without affirming or denying their correctness in other respects: *White, P. & P. Mfg. Co. v. Henry B. Pettes Importing Co.* 30 Fed. Rep. 864; *Hospes v. N. W. Mfg. & C. Co.* 48 Minn. 174; *Fogg v. Blair,* 133 U. S. 534; *Hollins v. Brierfield C. & I. Co.* 150 U. S. 371; *Roseboom v. Whittaker,* 132 Ill. 81. From these views it follows that the first class of creditors were, upon the facts before the court, entitled to have their attachment liens adjudged valid, and to be first paid out of the proceeds of the attached property in the hands of the receiver, and hence that the order of the superior court must be reversed.

Another question now arises, on the appeal of the third class of creditors. They claim, in the event of reversal, the case should be remanded for a new trial, in order that they may litigate the good faith of the attachments levied by the first class of creditors, which they allege in their answer were collusive and fraudulent. The difficulty is that they are not in a position to litigate the question. It is true they allege bad faith and collusion by the first class of creditors, but they only did so by way of answer to the plaintiffs' complaint. They did not even allege the facts as a counterclaim, nor was the answer served on the defendants whose rights they seek to attack. They have neither formed nor attempted to form any issue with their codefendants. Such a question arising between defendants must undoubtedly be raised by an appropriate pleading which the codefendants whose rights are assailed have an opportunity to answer. It would seem to be necessary to do this by cross-complaint, as under the old equity practice. *Trester v. Sheboygan,* 87 Wis. 496; 1 Van Santv. Eq. Prac. (2d ed.), 224. Certainly, no such issue having been tendered or raised by the third class of creditors, the first class of creditors are

not called upon to meet it. They are only required to meet: the plaintiffs' claims, and the plaintiffs having abandoned: all claims of fraud and collusion, as they had a perfect right, to do, that issue has disappeared from the case so far as the first class of creditors are concerned.

*By the Court.*— So much of the order appealed from as provides for an equal distribution among creditors of all property in the hands of the receiver, and denies any preference, and enjoins further proceedings by the defendants, is reversed, with costs, upon both appeals, and the remainder of the order is affirmed, and the action is remanded for further proceedings in accordance with law.

As to preferences among creditors given by insolvent corporations, see note to *Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co.* 22 L. R.. A. 802.— Rep.