Barth vs. Koetting and others.

BARTH, Receiver, Appellant, vs. KOETTING and others, Respondents.

*March 23 — April 12, 1898.*

*Banks: Loans to cashiers: Resulting trusts in land: Fraudulent conveyances.*

1. The cashier of a going bank may lawfully, acting in good faith and with the consent of the stockholders and directors, borrow money from such bank with which to buy land, and no trust in the land will arise from such transaction in favor of the bank. CASSODAY, C. J., dissents.

Barth vs. Koetting and others.

2. In order to render such a transaction fraudulent as to subsequent
   creditors of the bank, it must have been entered into with the in-
   tent to contract debts in the future and defraud the holders of
   such debts. CASSODAY, C. J., dissents.

APPEAL from a judgment of the circuit court for Milwau-
kee county: WARHAM PARKS, Judge. *Affirmed.*

This is an action in equity by the receiver of an insolvent
state banking corporation to have the title to a certain farm,
now held by the defendants *Rogers* and *Mann,* adjudged to
be held in trust for the plaintiff, as receiver, and to compel
a conveyance of the same to the receiver; also, to compel
an accounting for the rents and profits thereof, and to set
aside a mortgage placed thereon by *Rogers* and *Mann,*
owned by the defendant *Annie R. Ball.*

The facts appearing upon the trial were not materially in
dispute, and were substantially as follows:

The South Side Savings Bank was a state banking corpo-
ration, organized in 1868, and did business up to the 21st
day of July, 1893, when it closed its doors insolvent, and
three days later the plaintiff was appointed receiver. It did
a large and apparently successful business. Its capital stock
was only $25,000, and during the entire time G. C. Trumpff
was president and the defendant *Koetting* cashier, each own-
ing one half the capital stock, there being no other stock-
holders.

On the 21st of September, 1880, the bank purchased a
judgment of foreclosure upon the farm in controversy, and,
for convenience, took the assignment of the judgment in the
name of *Koetting,* the cashier. The land was sold by the
sheriff upon the judgment August 1, 1881, and bid in by
*Koetting* in his own name and in his own behalf, pursuant
to an agreement theretofore made between *Koetting* and
Trumpff, by which it was agreed that *Koetting* should take
the land and become the debtor of the bank for the purchase
money, $6,500, it being also agreed between *Koetting,*

Barth vs. Koetting and others.

Trumpff, and one Kopmeier (father-in-law of *Koetting*) that a certain open account standing on the books of the bank, in favor of Kopmeier, amounting to more than $6,500, and in which *Koetting* had an interest, should remain in the bank as security for the loan until it was paid. *Koetting* took the deed of the land, and placed it on record, and soon after went into possession thereof by his tenants, and has ever since, to the knowledge of Trumpff, openly claimed title thereto and made large improvements thereon, until it came into the hands of *Rogers* and *Mann.* The open account aforesaid thereafter remained in the bank to an amount always greater than *Koetting's* debt for the land, and, at the time of the failure of the bank, amounted to about $8,000, of which $6,000 was the property of *Koetting*, as between him and Kopmeier. Said account still stands on the books of the bank to the credit of Kopmeier, and no claim has ever been filed in the receivership matter therefor, nor any dividend paid thereon, because the personal representatives of Kopmeier (now deceased) have recognized and consented to the aforesaid agreement.

In August, 1893, the defendants *Rogers* and *Mann* brought an action against *Koetting* to recover about $9,000 deposited by them in the bank, on the ground that such deposit was induced by fraudulent representations by *Koetting* as to the solvency of the bank, and attached the land in question. They recovered judgment against *Koetting* in this action in September following, and the land was sold upon execution under the judgment in November to the defendants *Rogers* and *Mann*, for the full amount of their judgment. January 31, 1894, *Koetting* and his wife quitclaimed the premises to *Rogers* and *Mann;* and in November, 1894, *Rogers* and *Mann* mortgaged the same to the defendant *Annie R. Ball*, to secure payment of $7,000 then borrowed of her, she having no knowledge of any claim on the land by the receiver.

It does not appear that any of the creditors of the bank

now existing were such in August, 1891.   It further appeared
that *Koetting* was indebted to the bank in August, 1881, to.
an amount exceeding $50,000, and in later years largely in-
creased such indebtedness, and that the accounts were very
loosely kept, *Koetting's* checks being continually carried in.
the cash drawer as cash to a large amount.   The bank was
insolvent in 1881, and remained so thereafter until the failure,.
although it had done a large business, and was apparently.
prosperous up to a time shortly before its doors closed.

Upon these facts, the circuit court concluded that there
was no fraud in the transaction, and that any claim of the
bank was barred by the ten-years statute of limitations, and
dismissed the complaint on the merits, and the plaintiff ap-
peals.

For the appellant there was a brief by *Winkler, Flanders,.
Smith, Bottum & Vilas,* and oral argument by *F. C. Winkler.*
They argued that the defendant *Koetting,* as cashier of the
bank, was a trustee for it and held to a much greater degree
of scrupulosity in regard to the interests of the bank than.
other people.   Morse, Banks (2d ed.), 197.   He paid nothing
for the property he assumed to appropriate.   The arrange-
ment he made for payment to the bank was by parol and
not binding.   A dishonest appropriation of the property of
the bank by the cashier was void as to subsequent creditors, at
least where future credits were contemplated.   *Day v. Cooley,*
118 Mass. 524; *Case v. Phelps,* 39 N. Y. 164; *Savage v. Mur-
phy,* 34 id. 508; *Woolstone's Appeal,* 51 Pa. St. 452; *Ridge-
way v. Underwood,* 4 Wash. C. C. 129, 137; 8 Am. & Eng.
Ency. of Law, 751-2.   The cashier took the assignment of
the judgment as trustee for the bank, and his purchase at.
the sale did not change the title but merely ripened it into
another form.   His trusteeship has never been repudiated.
The bank paid subsequent taxes on the land.   The cashier,.
being the agent of the bank, could not acquire title to its
assets by adverse possession.   *Williams v. Page,* 24 Beav.

·654; *Williams v. McKay*, 40 N. J. Eq. 189; *Hun v. Cary*, ·82 N. Y. 65. The fact that the bank was insolvent at the time of the transaction made the cashier a trustee for its ·creditors. *Haywood v. Lincoln L. Co.* 64 Wis. 639; *Ford v. Plankinton Bank*, 87 id. 363.

For the respondents there was a brief by *Quarles, Spence & Quarles*, a brief in reply by *Miller, Noyes, Miller & Wahl*, attorneys for *Rogers* and *Mann*, and oral argument by *Geo.* *P. Miller* and *Geo. Lines*.

WINSLOW, J. The facts are simple. Trumpff and *Koetting* were the sole officers and stockholders of the bank, and the bank owned a foreclosure judgment. When the land was about to be sold under the judgment, both agreed that *Koetting* should buy the land, and that the bank would become his creditor for the purchase price upon the security of Kopmeier's open account with the bank, Kopmeier assenting thereto. There is no evidence that *Koetting* was not amply responsible for the loan at that time and for a long time afterwards. There is no doubt but that, if a stranger had bought the land, the bank might have extended credit to him, as it did to *Koetting;* and the transaction would have been perfectly valid, even though the purchase price might never have been paid. In the absence of statutory prohibition, a cashier may borrow money in good faith of his bank, with the consent of the managing body of the corporation. 1 Morse, Banks (3d ed.), § 173. This is what *Koetting* did in this case. With the consent of all the stockholders and directors, he bought the land, and became the debtor of the corporation for the purchase price. We do not perceive how the corporation itself could afterwards disaffirm the transaction when all who were interested authorized it with knowledge of the facts, and when it does not appear that the transaction was even unwise. The cashier is not a legal trustee. He occupies a position of trust and confidence to-

wards his bank, and is held to a high degree of diligence in performing his duties; but he may deal with his bank with consent of the board of directors or other managing body of the corporation. Morse, Banks, *supra*. He may not obtain a preference for himself if the corporation be insolvent, but there is no principle of law which prohibits him from borrowing money of the corporation in good faith while it is a going concern, with the consent of the board of directors. *Hinz v. Van Dusen*, 95 Wis. 503.

If the transaction was a lawful one when made, it follows necessarily that no trust arose in favor of the bank upon the land. This was not a case where the alienee took a conveyance in his own name "without the knowledge or consent of the person paying the consideration," nor was it a case where the alienee, "in violation of some trust," purchased lands with the money of another. R. S. 1878, secs. 2077–2079.

There being no ground of complaint on behalf of the bank, and no trust in the land having arisen in its favor, the only remaining question is whether there is anything in the transaction rendering it void as to the present creditors of the bank. The relation between a bank and its depositors is simply that of debtor and creditor, and not that of trustee and *cestui que trust;* nor did the fact that the bank was insolvent turn its assets into a trust fund, so long as it was a going concern. *Ballin v. Merchants' Exch. Bank*, 89 Wis. 278. It is therefore simply a question whether the transaction was fraudulent as to subsequent creditors. In order to be such, it must have been entered into with the intent to contract debts in the future, and defraud the holders of such debts. *Second Nat. Bank v. Merrill*, 81 Wis. 142. There is no evidence here justifying the conclusion that there was any such intent. The bank did a large business for thirteen years after the transaction in question, and there seems to be no reason to believe that either Trumpff

or *Koetting* contemplated failure at the time of nor for many years after this transaction.

The judgment of the circuit court was right.

*By the Court.*— Judgment affirmed.

CASSODAY, C. J.. dissents.