ATLANTA & WALWORTH BUTTER & CHEESE ASSOCIATION, Respondent, vs. SMITH, imp., Appellant.

*October 6, 1909—February 1, 1910.*

*Corporations: Purchase of their own stock: Rights of creditors: Assets as trust fund: Liability of stockholders: Fraudulent conveyances: Estoppel: Action at law or in equity?*

1. As a general rule, in case a corporation purchases its own stock, paying therefor by corporate assets, subsequent creditors cannot be regarded, judicially, as prejudicially affected.

2. As a general rule, unless plainly prohibited by statute or its organic act, a corporation may buy its own stock, using its assets therefor, so long as it acts in good faith pursuant to authorization by its governing body, and its officers, acting in like good faith, may do so as to stockholders actually or impliedly consenting and as to past or future creditors.

3. The trust-fund doctrine that under all circumstances the assets of a corporation constitute a trust fund for creditors does not prevail in this state.

4. In general, under sec. 2320, Stats. (1898), a transfer of property cannot be impeached for fraud upon subsequent creditors of the transferor unless there was at the time of the occurrence mutual intent to defraud them.

5. If a stockholder of a corporation, by agreement with it or any of its officers, sells his stock to the organization in exchange for corporate assets, knowing, actually or constructively, that the result will be to render the corporation insolvent: all parties to the transaction contemplating that it will continue in business and incur indebtedness as before, the creditors relying upon appearance of the previous solvent condition continuing,—the result to them must be presumed to have been mutually intended, supplying the element of bad faith essential to condemn the transfer.

6. In the circumstances stated in No. 5 the stockholder, co-operating in creating the delusive appearance, as to subsequent creditors, is estopped from claiming that his relations to the corporation were severed by the transaction so far as their continuance is necessary to preserve statutory liability under sec. 1773, Stats. (1898).

7. A transaction in the circumstances stated in No. 5 is void as to subsequent creditors by the law of estoppel and by sec. 2320. Stats. (1898), as well.

8. Where a transaction involving a transfer of property is void as to creditors of the transferor, and equity jurisdiction is not necessary to remove a cloud on title or for some other relief within the peculiar field of equity jurisdiction, the creditors may proceed at law, treating such transaction as if it never occurred, it being void as to him, and the bringing of an action inconsistent with validity of the transfer being a sufficient election.

[Syllabus by MARSHALL, J.]

9. TIMLIN, J., *concurring*, is of the opinion, further, that a corporation which has not had fifty per cent. of its capital stock subscribed has no power to dispose of its assets to a shareholder in purchase of his shares.

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Affirmed.*

Action by a creditor of the Superior Produce Company, a Wisconsin corporation, to recover of its stockholders upon the ground of their being personally liable for indebtedness incurred by the corporation in business carried on before one half of its capital stock was subscribed for.

The complaint contained two causes of action, one on an account for $115.44 and on a note for the same amount, both account and note having been duly assigned to the plaintiff, and the other for $549, a balance of account which accrued in plaintiff's favor. Defendant *Frank M. Smith,* who only answered, claimed that he became a stockholder January 15, 1906, and ceased to be such July 14, 1906, and otherwise put in issue all allegations of the complaint.

The cause was tried by the court, resulting in this decision as to facts: The Superior Produce Company is a Wisconsin corporation organized in 1905, with an authorized capital of 100 shares of $100 each. Shortly after such organization thirty-one shares were subscribed for, as follows: W. H. Cloud sixteen shares, J. K. Stephens ten shares, and C. K. Stephens five shares. The stock so subscribed for was fully paid. No other stock was taken. The corporation, however, commenced doing business and incurring indebtedness as soon as organized. About January 15, 1906, *Smith* became the owner of fifteen shares of stock, purchased of J. K. and C. K. Stephens. Except as hereafter stated he continued such owner down to the time of the trial. About June 26, 1906, the corporation incurred the indebtedness of $115.44 mentioned in the complaint. Thereafter it gave to the creditor a note for such amount and subsequently, before this action was commenced, plaintiff became the owner of the indebtedness and the note. July 1, 1906, the corporation was indebted to *Smith* for money loaned to it in the sum of $1,300, at which time he and the president, W. H. Cloud, knew the business had proved a — failure financially. July 14, 1906, by an agreement between *Smith* and Cloud, the latter, without express authority, as-

suming to act for the corporation, its property, in the main, valued by them at $3,607.80, was transferred to *Smith* for his stock at its par value, his account to the extent of $900, his assumption of a mortgage indebtedness on the property of $832, and other indebtedness on such property of $107.80, he at the same time drawing from the corporation in money $327.92 as the balance of his account. They then owned all the corporate stock outstanding. Before the transfer the value of the assets of the corporation, at a somewhat over-appraisement, was in excess of its liabilities to the extent of $794.75. The result of the transaction was to leave the corporation with indebtedness greatly in excess of its assets. Its business after such transfer was continued as before, according to the contemplation of the parties, during which time, and in October, 1906, it became indebted to plaintiff in the sum of $550.78, all without any knowledge on its part of the transfer aforesaid or of the fact that sufficient stock had not been subscribed to give the corporation legal capacity to transact business without incurring personal liability of its stockholders. *Smith* did not intend to act in fraud of creditors of the corporation, past or future, but his conduct resulted in placing an ostensibly solvent concern before the public which was in fact insolvent. It failed November 1, 1906, with liabilities of some six times its assets.

Upon such facts the court held that the purchase, in form by the corporation, of the fifteen shares of stock was fraudulent as to plaintiff, rendering *Smith,* notwithstanding such purchase, a stockholder as to the claims in suit. Judgment was therefore awarded against *Smith* and Cloud as claimed in the complaint, and against C. K. Stephens, who became a stockholder prior to the accruing of the indebtedness of $550.75, for that amount, and against all for costs. *Smith* appealed.

*G. O. Linderman,* attorney, and *S. M. Marsh,* of counsel, for the appellant.

For the respondent there was a brief by *Luse, Powell & Luse*, and oral argument by *L. K. Luse*.

The following opinion was filed October 26, 1909:

MARSHALL, J.   The ground, in the main, upon which the trial court decided that plaintiff was entitled to recover, is that a corporation cannot, lawfully, under any circumstances, buy in its own stock, paying therefor by assets of the company. It may be. that this states too broadly the learned circuit court's view of the law, but it is warranted, it is thought, by the language of the decision, and is certainly warranted by the argument of counsel for respondent in support of the judgment, citing authorities from foreign jurisdictions, supposed to directly, or inferentially, so hold, and deducing, by construction, the same doctrine from our statutes, and criticising decisions of this court, so far as they directly or substantially hold otherwise.

True, under some circumstances, a purchase by a corporation of its own stock would be a fraud on stockholders, and under other circumstances a fraud on present or future creditors, and so void or voidable at the instance of one or more of them in an appropriate judicial proceeding, though the circumstances under which such a transaction may be impeached by future creditors must be quite special.   So much so that it is often found stated, generally, by text-writers that, in case a corporation buys in some of its own stock, a subsequent creditor cannot complain.   1 Cook, Corp. (5th ed.) § 311.

By a long line of decisions here, in the absence of a plain statutory prohibition to the contrary, and we have none, or such prohibition in the articles of organization of the corporation, a corporation may, in general, so long as it acts in good faith by authorization of its governing body, lawfully purchase its own stock, either as to stockholders or present or future creditors, and without such authorization its officers may, acting in good faith, do so as regards consenting stock-

holders or such creditors. The court spoke decisively on the subject in *Shoemaker v. Washburn L. Co.* 97 Wis. 585, 594, 73 N. W. 333; *Calteaux v. Mueller,* 102 Wis. 525, 78 N. W. 1082; *Marvin v. Anderson,* 111 Wis. 387, 87 N. W. 226; *Pabst v. Goodrich,* 133 Wis. 43, 113 N. W. 398, and *Gilchrist v. Highfield,* 140 Wis. 476, 123 N. W. 102.

While it must be conceded that the common law of England and the judicial rule in a number of states is contrary to the foregoing, it has support in the decisions of many state and federal courts, significant among them being *Dupee v. Boston W. P. Co.* 114 Mass. 37; *Leland v. Hayden,* 102 Mass. 542; *Tuttle v. Batchelder & L. Co.* 170 Mass. 315, 49 N. E. 640; *Republic L. Ins. Co. v. Swigert,* 135 Ill. 150, 25 N. E. 680; *First Nat. Bank v. Peoria W. Co.* 191 Ill. 128, 60 N. E. 859; *Blalock v. Kernersville Mfg. Co.* 110 N. C. 99, 14 S. E. 501; *Fremont C. Mfg. Co. v. Thomsen,* 65 Neb. 370, 91 N. W. 376; *Rollins v. Shaver W. & C. Co.* 80 Iowa, 380, 45 N. W. 1037; *West v. Averill G. Co.* 109 Iowa, 488, 80 N. W. 555; *Eggmann v. Blanke,* 40 Mo. App. 318; *City Bank v. Bruce,* 17 N. Y. 507; *Strong v. Brooklyn C. T. R. Co.* 93 N. Y. 426; *Taylor v. Miami E. Co.* 6 Ohio, 176; *Lowe v. Pioneer T. Co.* 70 Fed. 646; *First Nat. Bank v. Salem C. F. M. Co.* 39 Fed. 89.

The doctrine here stated is said by the federal court in *First Nat. Bank v. Salem C. F. M. Co., supra,* to be well settled in the United States.

Many cases cited by text-book writers as following the English rule will be found on examination to be based on the fraudulent nature of the transaction involved, not want of corporate power. Many other cases cited will be found grounded on the general doctrine that all assets of a corporation, whether a going institution or not, constitute a trust fund for creditors, which has no support in this jurisdiction. *Hinz v. Van Dusen,* 95 Wis. 503, 70 N. W. 657; *Slack v. Northwestern Nat. Bank,* 103 Wis. 57, 79 N. W. 51; *Marvin v. Anderson,* 111 Wis. 387, 87 N. W. 226.

In general, where the doctrine heretofore here declared, as stated, and now approved obtains, it is held that, in case an insolvent corporation buys its own stock, or the effect of such a purchase is to render it insolvent, the transaction is void as to existing creditors. *German Sav. Bank v. Wulfekuhler,* 19 Kan. 60; *Clapp v. Peterson,* 104 Ill. 26; *Butler P. Co. v. Robbins,* 151 Ill. 588, 38 N. E. 153; *Currier v. Lebanon S. Co.* 56 N. H. 262; *Alexander v. Relfe,* 74 Mo. 495; *Hamor v. Taylor-Rice E. Co.* 84 Fed. 392; *Augsburg L. & I. Co. v. Pepper,* 95 Va. 92, 27 S. E. 807. So far as such decisions are grounded solely on the trust-fund doctrine alone, as applied in some jurisdictions to a going corporation, they might not apply here. Such doctrine does not rule this case, inasmuch as the corporation at the time of the transaction in question was a going concern and it satisfactorily appears that the purpose of the controlling power left in the organization was that it should continue in business as before, indefinitely, and there was no actual intent to defraud.

Counsel for respondent argue that the transaction in question, upon legal principles in general on the subject of remediable fraud upon the rights of creditors, was voidable at respondent's election, and that bringing the action constituted such an election; that though there was no actual intent to hinder or delay, effectually or otherwise, existing or future creditors, such was the necessary effect of what occurred, which is equivalent to actual fraud. The court concurs in that view as applied to the facts of this case.

The facts found in the light of the evidence indicate, pretty clearly, that appellant *Smith* must have known, if he paid reasonable attention to the matter when he received the greater proportion of the assets of the corporation in exchange for his stock, contemplating that the company would continue to do business notwithstanding its impoverished condition, that suspension was quite liable to occur, resulting in creditors suffering loss. What he ought to have known under the circumstances he must be held chargeable with having known, and

the natural and probable effect of the conditions, of which he must be held to have had at least constructive knowledge, he must be held to have intended, and the corporation to have intended as well.  If this goes further than the general rule as to transactions in fraud of present and future creditors it seems that the doctrine is a just one and a necessary limitation upon the right of a corporation and its stockholders to deplete its assets by exchanging the latter for its corporate stock, in order to prevent such right being exercised in a manner highly prejudicial to the public.

A transaction, as in this case, where, by treaty, the corporation is at once changed from a solvent to an insolvent concern, to the manifest advantage of a stockholder over existing creditors, the parties concerned contemplating that it may and probably will incur other indebtedness, while having the semblance of solvency as before, should be regarded, as to all creditors prejudiced thereby, characterized by bad faith and so as not having the essential necessary to uphold it under the decisions of this court to which we have referred.  In other words, a purchase by a corporation of its own stock, known by the parties to the transaction, or which ought to be known by them, to render it insolvent, is not a purchase in good faith as to existing creditors and not such as to future creditors if the parties to the transaction contemplate that the corporation will continue to do business and incur indebtedness, as before, on the faith of its previously supposed solvency continuing. In such a case the stockholder surrendering his stock is to be regarded as having acted fraudulently, at least constructively, as to existing creditors and subsequent creditors as well, and held, as to the latter, estopped by his conduct from denying his continuance as a stockholder so far as such denial to effect would prejudice such creditors trusting the corporation upon the appearance of solvency, and such continuance is necessary to liability to the corporation for the benefit of creditors or to statutory liability to them.

We are not unmindful that the rule, in general, as to avoidance of a transfer of property in fraud of future creditors applies only in case of actual intent to defraud them. *Sommermeyer v. Schwartz,* 89 Wis. 66, 71, 61 N. W. 311; *Case v. Phelps,* 39 N. Y. 164. That rule as stated is out of harmony with some adjudications, but is supported by the great weight of authority under statutes similar to our sec. 2320, Stats. (1898), as indicated by the text in 1 Moore on Fraudulent Conveyances at page 191 and authorities cited in note 23, and Bump on Fraudulent Conveyances (4th ed.) § 292, and cases cited. It is too restrictive, as generally stated, to apply to the situation we have here, and should, it is thought, be extended to include it, upon the theory that the duty of a stockholder not to deplete for his advantage corporate assets below the subscribed capital and become a party to a continuance of solvent appearance supplies the need for actual intent to defraud, where the natural and probable effect is to prejudice persons subsequently dealing with the corporation as solvent; condemning the transaction for want of that good faith necessary to sustain a purchase by a corporation of its stock,—while at the same time, so far as necessary to fully protect the rights of creditors, the doctrine of estoppel applies to prevent the stockholder from claiming, to effect, that his relations as such holder were terminated by such transaction.

Counsel for appellant contend that, since this action is grounded on the statutory liability of stockholders to creditors of a corporation whose credits accrue in the course of its business transactions in violation of sec. 1773, Stats. (1898), limiting such liability as to obligations thus incurred to the signers of the articles "and the subscriber or subscribers for stock transacting such business or authorizing the same, or having knowledge thereof, consenting to the incurring of the" liability "as well as the stockholders then existing," that there was no liability of *Smith* here, except upon the first cause of action, because his transfer of stock must be held to have ter-

minated his relations to the corporation as a stockholder, till such transfer shall have been set aside by some judicial determination. That is wrong for several reasons: *First,* respondent was entitled to the benefit of the law of estoppel to bar the claim of severance of such relations; *second,* the transaction was void at law, under the circumstances, by force of . sec. 2320, Stats. (1898); *third,* where a transaction is voidable as to creditors and they do not need the use of equity jurisdiction to remove a cloud on title or for an accounting or some other relief within the peculiar field of such jurisdiction, they may treat it as a nullity and proceed at law as if such transaction had never occurred. Of the latter the following are illustrations: *Bates v. Simmons,* 62 Wis. 69, 22 N. W. 335; *First Nat. Bank v. Knowles,* 67 Wis. 373, 28 N. W. 225; *Leslie v. Keepers,* 68 Wis. 123, 31 N. W. 486.

In the last case cited an accord and satisfaction, in form, pleaded as matter of defense to an action on the original claim, was met by proof, under objection, that the settlement was obtained by fraud. It was contended on appeal that the settlement could only be avoided in equity. The decision of the court was otherwise.

Counsel for appellant misapprehend the nature of this action, in making the assertion that it is to set aside the purchase of the stock as fraudulent, and misapprehend the law in supposing that such an action is necessary in order to charge *Smith* with statutory liability. The action is against him upon the theory that, as to plaintiff, the stock was never transferred, just as in *Leslie v. Keepers, supra,* the action was commenced upon the theory that no accord and satisfaction had occurred except one effectually avoidable at plaintiff's election and that the commencement of the action was a sufficient election, the circumstances of the transaction not requiring any restoration as a condition of recovery.

What has been said sufficiently, it is thought, deals with all objections advanced to the judgment and all reasons given by

counsel for its affirmance to indicate that, although the major ground for the judgment stated in the circuit court's decision and urged upon our attention in support thereof cannot be approved, it is right and must be affirmed.

*By the Court.*—So ordered.

TIMLIN, J. (*concurring*). In addition to the ground for affirmance consisting of constructive fraud upon future creditors in the transaction by which it is claimed *Smith* ceased to be a stockholder prior to the incurring of the debt in question, I desire to rest my concurrence also upon another ground going to lack of power in the embryo corporation to purchase in its own shares and so release from that status the persons who had theretofore become shareholders. The corporation never had fifty per centum of its capital stock subscribed, consequently there could be no first meeting, no directors, and no officers; but the signers of the articles of incorporation were by law intrusted with the direction of the affairs of the corporation. Sec. 1773, Stats. (1898), as amended by ch. 507, Laws of 1905. The signers of the articles did not, for the corporation, buy in *Smith's* shares. Who else at this stage had authority to represent the corporation for this purpose? *Walters v. Porter,* 3 Ga. App. 73, 59 S. E. 452. If the corporation was not represented in the transaction, how could the transfer have any effect whatever? Is the corporation, even through the signers of its articles, at this stage of its existence, empowered to dispose of its assets to a shareholder in purchase of his shares? I think not. The following sections of the statute may be of interest in connection with these queries: Secs. 1774, 1775, 1776, 1767, 1751.

A motion for a rehearing was denied February 1, 1910.