## In re SPARTA CANNING CO.

### SCHEPPKE et al. v. RICE.
### No. 5148.

Circuit Court of Appeals, Seventh Circuit.

Nov. 20, 1934.

B. R. Goggins, T. W. Brazeau, and R. B. Graves, all of Wisconsin Rapids, Wis., and H. J. Masters and L. A. Hansen, both of Sparta, Wis., for appellants.

William R. McCaul, of Tomah, Wis., for appellee.

Before EVANS, SPARKS, and FITZ HENRY, Circuit Judges.

SPARKS, Circuit Judge.

This appeal involves the question as to the right of appellants, who were directors of a corporation which subsequently suspended business and filed a voluntary petition in bankruptcy, to preferences in the assets of the corporation. Appellee, the trustee for the Sparta Canning Company, filed a petition praying that the Referee in Bankruptcy order appellants to show cause why certain chattel mortgages alleged to constitute fraudulent preferences should not be cancelled and set aside, and appellants required to account for the proceeds received from the sale of the property covered by the mortgages. He based his claim on the ground that the mortgages were executed:

(1) To secure the officers and directors of a corporation

(2) for a pre-existing debt

(3) after the corporation became insolvent.

Appellants in their answer claimed that on the contrary, the mortgages were to secure them for contemporaneous loans, and that at the time of their execution the corporation was a solvent, going concern.

The two mortgages in question had been executed on July 6, and September 4, 1931, to secure the payment of certain notes to appellants aggregating $24,360.90, dated from March 4, to June 24, 1931. They were

duly recorded at once upon their execution. Foreclosure proceedings were had on May 7, 1932, at which time the mortgagees bid in the mortgaged property for the amount due on the notes, plus costs and attorneys fees, a total of $25,109.12. On October 6, 1932, the company was adjudicated a bankrupt upon its voluntary petition.

The evidence showed that the bankrupt company was organized in 1924 and began doing business in 1925, but that at no time had it ever made any profits or paid any dividends. In April 1931, the stockholders at a regular meeting discussed the general condition of the company and the advisability of continuing operations for the ensuing packing season. The stockholders themselves failed to respond to the suggestion that they help finance the pack, but voted to authorize the directors to borrow for that purpose, and to mortgage any or all of the assets of the corporation as security for the loans. Thereafter appellants made advances amounting to over $24,000, part of which was used to pay certain indebtedness to a bank, and the balance to finance the 1931 pack. The last note given to one of the directors was dated June 24, 1931, for $4,329. The pack consisted of two parts, the first of peas, and the other of beans, and the evidence showed that as soon as each was completed it was mortgaged under the two mortgages herein involved. At that time the corporation owed the growers of the two 1931 crops about $7,000.

The referee found that at the time the advancements were made the corporation was a going concern, but that it was insolvent at the time the mortgages were executed. He also found that the advances were made in order to enable the corporation to continue in business, and that part of the money was used to pay an old indebtedness. He concluded as a matter of law that the mortgages were valid as against the corporation and its creditors, basing this conclusion upon the proposition, as stated in his memorandum, that, "In Wisconsin an insolvent person, including a corporation, has a right to prefer a creditor, whether that creditor is an agent of an individual or an agent or officer of a corporation. But when a corporation is no longer a going concern,—or the equivalent thereof, a suspension of business is contemplated, or the state of affairs is such that the officers know or ought to have known that suspension was about to occur,—the property of a corporation becomes a trust fund for creditors and all creditors must be treated alike and no one

has any right to more than his share and it makes no difference whether the creditor is an officer of the corporation or not." He also concluded that it made no difference whether the liability was considered as a pre-existing debt or not, because a creditor had the right to take security or receive pay for a pre-existing debt where a corporation was insolvent but still a going concern.

The appellants filed exceptions to the referee's report as to the finding that part of the money was used for the payment of an old debt of the company, and that at the time of the execution of the mortgages the corporation was insolvent. Appellee filed a petition to review the report in that it held the mortgages valid as against the creditors and trustee of the bankrupt.

Upon review, the District Court amended the findings of the referee by adding the following:

"That at the time of the execution of said mortgage the financial situation and condition of the Sparta Canning Company was such that the directors knew or ought to have known that suspension of its business was impending.

"That the consideration for said mortgage was a pre-existing indebtedness, and that its execution was clearly an attempt on the part of the directors to obtain a preference for themselves for an unsecured debt over the other general creditors, and that said mortgage is invalid."

He reversed the order of the referee, remanding the cause to him for the purpose of taking further testimony to establish the reasonable market value of the property covered by the mortgages as of the date of its sale, which amount was to be turned over to the trustee by the appellants.

Appellants first assign as error the action of the District Court in amending the findings of the referee in bankruptcy, for the reason that the petition for review presented only the question as to whether or not the order entered by the referee was supported by the facts as found by him. We think there is no merit in this contention in view of the extremely broad power conferred upon the court to "consider and confirm, modify or overrule, or return, with instructions for further proceedings, records and findings certified to them by referees." 11 USCA § 11 (10). See In re Green River Jockey Club (D. C.) 5 F.(2d) 259; In re Bresnan (D. C.) 45 F.(2d) 193.

■ We must, therefore, consider whether the mortgages were given to secure pre-existing or contemporaneous debts. As to this we have little hesitation in deciding that the debts were pre-existing ones. Appellants relied upon the fact that the advances were made by them in reliance upon the authorization of the stockholders for the pledging of the assets.· However, since no pledge was actually given until July 6 and September 4, we think that no lien accrued until those dates, as against the creditors whose claims were complete prior to those dates. It may be that, had the instruments been executed and placed on record in accordance with the authorization of the stockholders' meeting in April, 1931, and had the advances been made thereafter, the insolvency of the corporation would not have prevented the directors from taking the preference. But that was not the sequence of events, and we think the directors can not rely upon a secret agreement to give a mortgage which was not executed until after other claims had accrued and after the corporation had become insolvent.

■ The second issue is as to the time when the corporation actually became insolvent. This, we think, is answered by the finding of the referee that the company was insolvent at the time the mortgages were executed. Although appellants excepted to this finding we think there was substantial evidence to support it, particularly when it was admitted by one of the appellants that it had been insolvent for the last three years.

■ Appellants, however, argue that even though the corporation was insolvent, under the strict sense of the term, at the time the mortgages were given, unless it had actually ceased to be a going concern, and they were given in contemplation of the suspension of business, the fact of insolvency did not affect their validity. They rely principally upon the case of Sanford Fork & Tool Company v. Howe, Brown & Company, 157 U. S. 312, 15 S. Ct. 621, 623, 39 L. Ed. 713, upon which, however, appellee also relies. Appellants quote the following language of the court as supporting their position:

"* + * here the corporation was a going concern and intending to continue in business, and the mortgage was given with a view of enabling it to so continue, and to prevent creditors whose debts were maturing from invoking the aid of the courts to put a stop thereto. Can it be that, if at any given time in the history of a corporation engaged in business, the market value of its property is in fact less than the amount of its indebtedness, the directors, no matter what they believe as to such value, or what their expectations as to the success of the business, act at their own peril in taking to themselves indemnity for the further use of their credit in behalf of the corporation? Is it a duty resting upon them to immediately stop business and close up the affairs of the corporation? Surely, a doctrine like that would stand in the way of the development of almost any new enterprise. It is a familiar fact that in the early days of any manufacturing establishment, and before its business has become fully developed, the value of the plant is less than the amount of money which it has cost; and if the directors cannot indemnify themselves for the continued use of their personal credit for the benefit of the corporation, many such enterprises must stop in their very beginning."

The facts in that case were that the corporation had been organized in 1888 and continued in business for a period of eighteen months, up to May 13, 1890. On March 17, 1890, a mortgage was executed covering part of the property of the corporation but leaving nearly $90,000 worth unencumbered. This mortgage was to secure certain directors for endorsing and for continuing to endorse the paper of the. company. It was recorded on May 1, 1890. The court found: "At the time of its execution and delivery * * * the company 'was in full operation as a going concern,' with ample means to pay its indebtedness, if the cash cost of its property could be obtained therefor. The indorsers believed that 'the property was worth what it had cost in cash, and believed the corporation to be solvent,' and in fact the corporation continued to be a 'going concern, and carried on its business in the usual way, and met all its obligations (other than the notes embraced in the indemnity mortgage) as they matured in the usual course of business' until the appointment of a receiver May 13, 1890 * * *." In reaching the conclusion that the mortgages in question were valid as against other creditors, the court distinguished the situation from that one where "* * * the directors of a corporation in fact insolvent, though continuing and expecting to continue in business, executing a mortgage on the property of the corporation to simply secure themselves for a past indebtedness; for here the corporation, although insolvent within the rule which declares that insolvency exists when a debtor has not property sufficient to pay his debts, was still a going concern and intending to continue its business, and the mortgage was executed not

simply to secure directors and stockholders for past indebtedness but to induce them to procure a renewal or extension of paper of the company then maturing * * and also to obtain further advances of credit."

We think that the above quotations from the case sufficiently indicate the distinction between it and the case at bar. Under our view of the case, the mortgages herein involved were given solely to secure a pre-existing debt, regardless of the informal agreement entered into in the stockholders' meeting prior to the advances. The mortgages covered practically all of the unencumbered property of the corporation, leaving almost nothing as security for other debts which would have to be incurred in connection with the 1931 pack. The stockholders and directors knew that it was questionable whether it was wise even to try to continue operations for that year, and discussed the advisability of not opening the plant for the packing season of 1931. Under those circumstances we think that the length of time that the corporation stayed out of bankruptcy after the mortgages were given is immaterial. It was only a question of time until there would have to be a liquidation, as the directors were bound to know because they took a pledge of practically the entire unencumbered property, in effect leaving the entire risk of the season's pack upon the other creditors who had no way of knowing that they were thus bearing the entire risk.

Appellants cite a number of Wisconsin cases as authority for the proposition that insolvency is not the only factor in fraudulent preference cases, but that to set aside preferences even as to the directors of a corporation it is necessary to demonstrate that the corporation is not only insolvent but has also ceased to be a going concern. From our review of the Wisconsin cases on this subject, we do not find any which states the rule in such form, where the question was before the court.[1] In South Bend Chilled Plow Company v. George C. Cribb Company, 97 Wis. 230, 72 N. W. 749, the rule is laid down

that a going concern, though insolvent, may in good faith prefer one creditor over another. However, that question was not then before the court, for the fact of insolvency was not present. It is stated in Atlanta & Walworth, etc., Association v. Smith, 141 Wis. 377, 123 N. W. 106, 32 L. R. A. (N. S.) 137, 135 Am. St. Rep. 42, that the general doctrine that all assets of a corporation, whether a going institution or not, constitute a trust fund for creditors, has no support in that jurisdiction. We do not understand this to mean that Wisconsin permits directors and officers of an insolvent corporation to take security for a pre-existing debt, and we find no case in which such a thing has been permitted. In Hinz v. Van Dusen, 95 Wis. 503, 70 N. W. 657, 658, it is specifically stated that "The doctrine is well established here that the directors of an insolvent corporation cannot lawfully prefer themselves over its general creditors." In the latest case dealing with the subject which we were able to find, Schmitz v. Wisconsin Soap Manufacturing Company, 204 Wis. 149, 235 N. W. 409, 410, it is said that "According to a majority of courts, an insolvent corporation, so long as it remains a going concern in possession and control of its property, may prefer one creditor to another, even though that creditor be an officer or director. * * In Wisconsin it would seem that there is a distinction between preferences to directors and officers, which by the decision in Haywood v. Lincoln Lumber Company, 64 Wis. 639, 26 N. W. 184, appear to be condemned, and preferences to others which seem to be recognized as valid. * * * It is of course elementary that insolvency at the time of the transaction which is charged as constituting a preference is indispensable in establishing the existence of a preference. * * * Insolvency * * * simply means that the assets of the alleged insolvent are insufficient, at a fair valuation, to pay his debts."

In the case of Marvin v. Anderson, 111 Wis. 387, 87 N. W. 226, 227, the court dis-

---

[1] See Schmitz v. Wisconsin Soap Manufacturing Company, 204 Wis. 149, 235 N. W. 409; Atlanta & Walworth, etc., Association v. Smith, 141 Wis. 377, 123 N. W. 106, 32 L. R. A. (N. S.) 137, 135 Am. St. Rep. 42; Marvin v. Anderson, 111 Wis. 387, 87 N. W. 226; Hamilton v. Menominee Falls Quarry Company, 106 Wis. 352, 81 N. W. 876; Slack v. Northwestern Nat. Bank, 103 Wis. 57, 79 N. W. 51, 74 Am. St. Rep. 841; Rowe v. Leuthold, 101 Wis. 242, 77 N. W. 153; Barth v. Koetting, 99 Wis. 242, 75 N. W. 395; South Bend Chilled Plow Company v. George C. Cribb Company, 97 Wis. 230, 72 N. W. 749; Hinz v. Van Dusen, 95 Wis. 503, 70 N. W. 657; Ford v. Hill, 92 Wis. 188, 66 N. W. 115, 53 Am. St. Rep. 902; Ford v. Plankinton Bank, 87 Wis. 363, 58 N. W. 766; Ballin v. Merchants' Exchange Bank, 89 Wis. 278, 61 N. W. 1118, 27 L. R. A. 357, 46 Am. St. Rep. 834; Haywood v. Lincoln Lumber Company, 64 Wis. 639, 26 N. W. 184.

tinguished between the two meanings of the term . insolvency, "as the subject * * * is dealt with by insolvent and bankrupt laws, and the general meaning thereof. The former is inability of a person to pay his debts as they mature in the -ordinary course of business; the latter is a substantial excess of a person's liabilities over the fair cash value of his property. The former does not militate against a debtor corporation dealing with its property as. it sees fit; while the latter, in case of a corporation, if it is on the verge of collapse or has suspended payment * * * is held to impress upon its property a trust for the benefit of its creditors." We think that the facts as presented by the record in this case indicate that the company was insolvent, whichever meaning be considered, and that the referee's conclusion that the mortgages were valid was erroneous. It follows that the District Court was justified in reversing his order.

Judgment affirmed.