## Wytheville.

### AUGSBURG LAND AND IMPROVEMENT CO. V. PEPPER.

#### JULY 22, 1897.

1. SPECIFIC PERFORMANCE—*Completed Contract—When Performance Will be Decreed.*—The burden of proving a completed contract is on the plaintiff, and when proved it is a matter of sound judicial discretion with a court of equity whether it will decree its specific performance. If, under all the circumstances, the contract appears to be fair, equal, and just in its terms, and free from all fraud, illegality, or other inequitable features its specific performance will be decreed. In the case at bar the complainant has failed to establish a concluded contract between the parties. The evidence shows a contract executed by a committee of directors, which was subject to ratification by the stockholders who rejected it.

2. CORPORATIONS—*Liquidation—Power of Directors—Purchase of Stock.*—After the stockholders of a corporation have taken the necessary steps to effect a dissolution of the corporation, and are endeavoring to liquidate its indebtedness, the functions of the board of directors are in effect suspended. They cannot purchase for the company, with its property, the stock of one of its shareholders, who has full knowledge of all the facts, at a price which will create inequality amongst the stockholders. Such an act would be a fraud on the other stockholders.

Appeal from a decree of the Circuit Court of Wythe county, pronounced September 25, 1894, in a suit in chancery, wherein the appellee was the complainant, and the appellant was the defendant.

*Reversed.*

The complainant sold to the Augsburg Land & Improvement Company three parcels of land, containing in the aggregate

66.45 acres, at the price of $6,645. Of this sum $2,700 was settled by paid-up stock of the company, $1,345 was paid in cash, and two notes for $1,345 each, payable, respectively, at one and two years after date, were given for the residue. Nothing was paid on either of these notes. On March 15, 1892, the following agreement was made, under the circumstances detailed in the opinion of the court:

"This agreement made and entered into, this 15th day of March, 1892, between the Augsburg Land & Improvement Co. of the first part, and C. T. Pepper of the second part.

"Witness, that the party of the first part agrees to reconvey to the party of the second part the land purchased of him, lying north of the Norfolk & Western R. R., about 20 85-100 acres, (twenty 85-100), the party of the second part agreeing to surrender twenty and 85-100 shares of fully paid-up stock of said company.

"[Signed.]     J. H. WISSLER, President;
W. H. SPENCE, Secretary;
C. T. PEPPER."

This suit was brought for the purpose of having a specific execution of the foregoing contract, and also to enforce collection of the two notes aforesaid. There was a decree in favor of the complainant, and the defendant appealed.

*Walker & Caldwell* and *Fulton & Fulton*, for the appellant.

*Blair & Blair*, for the appellee.

RIELY, J., delivered the opinion of the court.

No suit can, of course, be maintained for the specific performance of a contract unless the alleged contract exists, and the burden of proving a concluded contract devolves on the plaintiff.

And when an actual contract has been shown, the enforcement

of its performance by a court of equity is not a matter of absolute right, but rests in a sound judicial discretion. The contract must be perfectly fair, equal, and just in its terms, free from fraud, mistake, illegality, or any other inequitable feature; and the court, in judging of its fairness and the propriety of compelling its performance, will look at all the surrounding circumstances. Fry on Spec. Per. of Contracts, sec. 722; Pomeroy's Eq. J., sec. 1405, and note; *Stearns* v. *Beckham*, 31 Gratt. 379; and *Halsey* v. *Monteiro*, 92 Va. 581.

The defendant, which is a land and improvement company, bought lands from a number of persons, and, among other lands, it purchased from the plaintiff 66.45 acres for $6,645, of which sum $2,700 was paid in its capital stock, a part paid in cash, and notes given for the residue, which were paid after the institution of this suit.

The company did not succeed, and the propriety of dissolving and winding it up was presented by its president to the stockholders at a meeting held on January 18, 1892. The meeting thereupon directed that the president appoint a committee "to secure additional stock or sell land, or arrange somehow to meet the obligations of the company."

The plaintiff was made chairman of this committee, and, as such chairman, reported, to the Board of Directors at a meeting held on February 1, 1892, that the committee was unable "to report any arrangement whereby the indebtedness of the company could be met."

At a meeting of the stockholders on February 9, 1892, steps were taken to have a meeting duly called for March 12, 1892, for the purpose of effecting lawfully a dissolution of the company. The plaintiff was present at this meeting, and also at the meeting held on January 18.

It thus appears that the plaintiff was fully informed as to the condition and indebtedness of the company, and apprised of the purpose of the stockholders to take charge of its affairs, and dissolve and wind it up.

The Board of Directors also met on February 9, 1892, and provided for calling, according to law, a meeting of the stockholders on March 12, 1892, the day fixed upon by them, and at the same time, by resolution, authorized and empowered the president and secretary of the company to make contracts with the persons from whom it had bought lands for reconveying the same to them upon the terms set out at a meeting of the board, and in a meeting of the stockholders. The contracts, however, were not to be final, but to be made subject to the approval and ratification of the stockholders at their meeting appointed for March 12. If any of the said persons were unwilling to enter into such contracts, the president and secretary were directed to obtain from them such propositions as they were willing to offer to the company, and report the same in writing to the said meeting.

The stockholders met on March 12, pursuant to the call. The president, as chairman of the committee to make contracts with the persons from whom the company had bought lands, reported articles of agreement with nearly all of them, and a *proposition* from the plaintiff. The stockholders ratified the contracts, but continued the committee to see if it could not make the same terms with the plaintiff as were made with the other persons.

Three days thereafter, on March 15, 1892, the contract sought to be enforced was entered into. It was signed by the committee (the president and secretary), and by the plaintiff. The plaintiff contends, however, that it was not signed by the president and secretary simply as the committee, but by the authority and direction of the Board of Directors, and that immediately upon its execution it became a final agreement, and was so intended by the parties. In this contention he is not supported by the testimony.

It appears that it was prepared by the plaintiff, but, when presented to the president and secretary, they hesitated about signing it, presumably because it varied materially from the contracts made with the other persons from whom the com-

pany had bought lands, and they consulted two of the other members of the Board of Directors, the president and secretary being also members of the board, and these other two directors consented that the president and secretary should sign it. The plaintiff deposed that there was a meeting of the board held by the said four directors on the day the contract was executed, but the secretary states that there was no regular meeting of the board on that day, and the book in which the record of their meetings was kept makes no mention of such meeting, though the secretary thinks that he made some note or record of it. The only other of the directors who testified in the case, said that there was no formal meeting of the board; that he was alone, and not acting in the capacity of a director, when consulted about the contract; and that the president and secretary signed it simply in their capacity of committee.

Both the secretary and the director who testified refute the contention of the plaintiff that upon the execution of the agreement it became, without further action, a concluded and binding contract on the company. They state positively that it was made subject to the approval and ratification of the stockholders; and, in confirmation of their testimony, the record shows that the contract, of which specific performance is asked, was reported to the stockholders and rejected by them at their meeting held on April 16, 1892, and that the plaintiff, though present at the meeting, did not oppose the resolution rejecting the contract, or claim that it was final and binding on the company.

The plaintiff has not sustained the burden resting upon him to prove a concluded contract, but the testimony preponderates in favor of the contention of the defendant that the alleged contract was made subject to the ratification of the stockholders, who, having rejected it, there is no actual or binding contract to be executed.

But even if it had been proved that the contract was executed by the president and secretary, by authority of the Board of Directors, and was intended to be final without the ratification

of the stockholders, it was not such an agreement as the board had the right to make under the circumstances of this case.

The stockholders had taken the necessary steps to effect a dissolution of the company, and were endeavoring to arrange and liquidate its indebtedness with the least loss to themselves, and by their action had, in effect, suspended the functions of the directors. All the stockholders whom the company owed for land, with the exception of the plaintiff and one or two others, had agreed to take back their lands at the price at which the company had bought them, give up their stock, and receive the amount of money they had paid in, and bound themselves to share *pro rata* the indebtedness of the company. All this was known, both to the directors and to the plaintiff.

Under these circumstances, the board had no power to purchase for the company the stock of one of its shareholders with its property, thereby diminishing its assets and increasing its inability to meet its obligations, and adding to the burdens assumed by the other shareholders. The directors can make no disposition of the corporate property which shall not inure to the equal benefit of all the stockholders. Such an act would be not merely *ultra vires*, but a fraud upon the other stockholders.

It is said by an eminent author that directors "cannot use the funds of the company in purchasing the shares of its members, thereby distributing its tangible assets among its members, and advancing its insolvency and dissolution," and that the obvious reason for this is, that "such transactions have the effect of distributing the capital stock of the company to particular members, to the prejudice of the rest." 3 Thompson on Corporations, secs. 3995 and 4035. See also Green's Brice's *ultra vires*, p. 484, and note.

For the foregoing reasons the Circuit Court erred in decreeing specific performance of the contract set forth in the bill, and its decree must therefore be reversed, and the bill be dismissed.

*Reversed.*