# Wytheville.

CREECY AND OTHERS v. GRIEF AND OTHERS.

June 11, 1908.

1. SPECIFIC PERFORMANCE—*Discretionary—Evidence.*—Specifie performance will not be decreed as a matter of right, but every application therefor is addressed to the sound judicial discretion of the court, and it is incumbent upon the party seeking it to prove the contract sought to be enforced by competent and satisfactory evidence. There must be a clear mutual understanding and a positive assent on the part of each party.

2. SPECIFIC PERFORMANCE—*Proof of Contract—Agreement—Acceptance of Offer—Case in Judgment.*—When the court is unable from all the circumstances to say whether the minds of the parties met on all the essential particulars, or if they did, then cannot say upon what substantial terms they agreed, or trace out any practical line where their minds met, specific performance will be refused. If an offer is made and acceptance required at a particular time or in a specified way, such acceptance must be alleged and proved, or the acceptor cannot have specific performance. In the case in judgment, the complainant has not proved his case with that convincing clearness which is essential to entitle him to specific performance.

Appeal from a decree of the Circuit Court of Henrico county. Decree for the defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*Coke & Pickrell* and *Scott & Buchanan,* for appellants.

*Meredith & Cocke,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

This is a suit in equity brought by the appellants for specific performance of an alleged contract for the sale of real estate, the property of the appellee, Max Grief. The lower court denied the prayer of the bill, and the plaintiffs appealed.

For several years prior to November, 1904, the property had been in the hands of Brown & Company, real estate agents in the city of Richmond, to be rented, and also for the purpose of finding a purchaser on such terms as the owner might prescribe, but without authority to sell on their own responsibility. On October 29, 1904, Grief revoked the power of Brown & Company even to find a purchaser, and withdrew the property absolutely from market. Subsequently, after considerable correspondence on the subject, Grief authorized Brown & Company to sell the land to D. R. Creecy for $18,000.

The negotiations which led up to this litigation all occurred on November 1 and 2, 1904, and were conducted by the parties, in Baltimore and Richmond, respectively, by long-distance 'phone. On November 1, while Rosenheim, Grief's Baltimore attorney, was in communication with J. T. Brown, of Brown & Company, touching the terms of sale which Grief was willing to allow Creecy, the intending purchaser came into Brown & Company's office, and, having been called to the 'phone by J. T. Brown, the terms of sale were communicated to him in person by Rosenheim.

It is conceded that $18,000 was the price agreed on for the property, but contradictory theories are advanced with reference to the terms of sale; the contention on the part of the plaintiffs being that the sale was to be closed by 12 o'clock M., November 2, by the payment of $3,000 cash, the remaining $15,000 to be paid later upon examination of the title and delivery of a satisfactory deed, which terms they insist were duly complied with by A. J. Sands and J. P. Carson (who had been admitted as partners in the deal by Creecy) depositing their check for $3,000 with Brown & Company for Grief, within the time prescribed. The opposing theory of Grief is that, in

order to consummate the contract, $3,000 had to be deposited by Creecy to Grief's credit in a bank, either in Richmond or Norfolk, of which deposit he was to be notified by the bank by telegram before 12 o'clock M. of November 2.

The evidence and inherent probabilities of the situation tend to sustain one of two propositions—either of which is fatal to the plaintiffs' case—namely: That the minds of the parties never in fact met, or that Grief's version of the terms submitted by him to Creecy is correct.

It is not denied that Cornell, the agent of Forbes, was present in Rosenheim's office in Baltimore, offering $18,000 cash for the property, pending negotiations, and that the Richmond parties were advised of that fact. It was essential, therefore, from Grief's standpoint, not only that his terms should be complied with, but likewise that he should be notified of such compliance, in order that he might act upon Forbes' offer. He was not so notified by the hour appointed, and, thereupon, sold the property to Forbes' agent.

It is the settled doctrine in this State, that the jurisdiction of a court of equity to decree specific performance of contracts may not be invoked as a matter of right, but that every such application is addressed to the sound judicial discretion of the court. *Darling* v. *Cumming,* 92 Va. 521, 23 S. E. 880; *Augsburg Land &c. Co.* v. *Pepper,* 95 Va. 92, 27 S. E. 807; *Gish* v. *Jamison,* 96 Va. 312, 21 S. E. 521; *Pennybacker* v. *Maupin,* 96 Va. 461, 31 S. E. 607.

It is in like manner well settled that, in order to entitle a plaintiff to this equitable relief, it is incumbent upon him to prove the contract sought to be enforced by competent and satisfactory evidence. *Shenandoah Valley R. Co.* v. *Lewis,* 76 Va. 833; *Blair* v. *Sheridan,* 86 Va. 527, 10 S. E. 414; *Dunsmore* v. *Lyle,* 87 Va. 391, 12 S. E. 610; *Simmons* v. *Cramer,* 88 Va. 411, 13 S. E. 902.

The "Minds Must Have Met.—As it is elementary that there can be no contract unless the minds of the parties have met and

mutually agreed, specific performance will not be decreed where this requisite is lacking. Equity requires a clear mutual understanding and a positive assent on the part of each party. An offer must be accepted in the terms and form submitted or there is no valid assent, such as will create a contract which may be specifically enforced." 26 Am. & Eng. Ency. of Law, 21.

"Where the court is unable from all the circumstances of the case to say whether the minds of the parties met upon all the essential particulars, or if they did, then cannot say exactly upon what substantial terms they agreed, or trace out any practical line where their minds met, specific performance will be refused." *Blanchard* v. *Railroad Co.,* 31 Mich. 43, 18 Am. Rep. 142; *Clinchfield Coal Co.* v. *Powers,* 107 Va. 393, 59 S. E. 370.

So, also, with respect to the necessity for the acceptance within the time and on the terms of the proposal, it has been held: "If an offer is made by letter, in which the person making the offer requests an answer by telegraph, *yes* or *no,* and states that, unless he receives the answer by a certain date, he shall conclude *no,* the offer is made dependent upon an actual receipt of the telegram on or before the date named." *Lewis* v. *Browning,* 130 Mass. 173 (opinion by Gray, C. J.). See also, Pom. on Spec. Perf. (2nd ed.), sec. 390; *Carr* v. *Duval,* 14 Pet. 77, 10 L. Ed. 361; *Waterman* v. *Banks,* 144 U. S. 394, 36 L. Ed. 479, 12 Sup. Ct. 646.

It is not necessary to decide between the conflicting theories propounded by the evidence, in this instance; but it is quite sufficient, upon the authorities cited, to rest the decision on the failure of the plaintiffs to prove their case with that convincing clearness which is essential to entitle them to a decree for specific performance.

The decree appealed from must, therefore, be affirmed.

*Affirmed.*