# Richmond.

## IVEY C. PORTER, ET AL. v. M. L. SHAFFER AND I. D. SHAROVE, PARTNERS, TRADING AS VIRGINIA WRECKING AND SALVAGE CO.

### May 27, 1926.

1. FRAUDS, STATUTE OF—*Partnership—Agreement to Share Profits from Lands Owned by One of the Parties.*—A verbal agreement to become interested in and to share the profits from lands already owned by one or more of the parties at the time the partnership is formed, is an agreement for the purchase and sale of an interest in real estate, and within the statute requiring the same to be in writing.

2. FRAUDS, STATUTE OF—*Agreement to Share Profits from Lands Owned by One of the Parties—Case at Bar.*—In the instant case complainants alleged that in pursuance of a parol agreement with defendants they had erected a building on land of one of the defendants, and that defendants, after the erection of the building, refused to carry out the agreement.

   *Held:* That since one of the defendants owned the land in question at the time of the alleged agreement, the same would have been unenforceable under the statute of frauds, upon the ground that complainants were entitled to an interest in said land by virtue of a partnership created therein by said agreement.

3. TRUSTS AND TRUSTEES—*Constructive Trusts—Definition.*—Constructive trusts are those which, independently of the intention of the parties, the law creates under certain circumstances, in order to prevent fraud or injustice which would otherwise ensue. These trusts are not based upon the presumed intention of the party. On the contrary, they exist contrary to that intention. They are trusts which are forced upon the conscience of the party by operation of law.

4. TRUSTS AND TRUSTEES—*Constructive Trusts—Distinguished from Resulting Trusts.*—The distinction between resulting and constructive trusts is not one which can be adhered to with scientific accuracy. Indeed, many cases ordinarily classified as resulting trusts might with almost equal propriety be treated as constructive trusts, because the presumption of intention in these cases is a forced presumption—contrary to the actual fact—and is imputed to the party only to prevent an intended fraud. Nor is the distinction of much practical im-

portance, whether called "resulting" or "constructive" trusts, they are governed by the same rules, and they are alike implied by law, in contradistinction from being created by the parties.

5. TRUSTS AND TRUSTEES—*Constructive Trusts—Distinguished from Resulting Trusts.*—A resulting trust is based on the presumed intention of the parties and the transaction, therefore, is an honest one between the parties. A constructive trust is forced upon the conscience of the defendant regardless of intention, in order to prevent a fraud on the plaintiff. Such a trust, therefore, usually suggests a dishonest transaction.

6. TRUSTS AND TRUSTEES—*Constructive Trusts—Agreement to Build on the Land of Another—Case at Bar.*—In the instant case complainants alleged that they had built on the land of one of defendants in pursuance of a parol agreement, whereby defendants agreed to execute a long lease of the premises, at a normal rent, to them, which after the erection of the building defendants declined to do. This defendants denied in their answer. There was no evidence of fraud on the part of defendants nor of the existence of any fiduciary relation between the parties.

   *Held:* That the land in question was not impressed with a constructive trust in complainant's favor.

7. SPECIFIC PERFORMANCE—*Frauds, Statute of—Part Performance—Requisites.*—The principles upon which a court of equity will avoid the statute of frauds, upon the ground of part performance are: (1) That the contract must be clear, definite and unequivocal in all its terms, and established by clear and satisfactory proof; (2) the acts of part performance must refer to, result from, or be made in pursuance of the agreement proved; (3) the agreement must have been so far executed that a refusal of full execution would operate a fraud on the other party and place him in a situation which does not lie in compensation.

8. SPECIFIC PERFORMANCE—*Frauds, Statute of—Conflicting Evidence—Case at Bar.*—In the instant case defendants denied that they made the parol agreement, relied on by complainants, and the evidence on the subject was in irreconcilable conflict as to the terms of the contract in several material and important particulars. In viewing the evidence it must at least be said that, if the minds of the parties met at all upon all the essential terms of the alleged agreement, the proof entirely lacks that precision and clearness which is necessary to justify a court of equity in taking such an agreement out of the statute of frauds and enforcing its performance.

9. FRAUDS, STATUTE OF—*Part Performance—Recovery at Law—Benefit to Defendant.*—Although part performance by one of the parties to a contract within the statute of frauds will not, at law, entitle such party to recover upon the contract itself, he may nevertheless recover for money paid by him, or property delivered, or services rendered,

in accordance with and upon the faith of the contract. The law will raise an implied promise on the part of the other party to pay for what has been done in the way of part performance. But this right of recovery is not absolute. The plaintiff is entitled to compensation only under such circumstances as would warrant recovery in case there was no express contract; and hence it must appear that the defendant has actually received, or will receive, some benefit from the acts of part performance. It is immaterial that the plaintiff may have suffered a loss because he is unable to enforce his contract.

10.  IMPROVEMENTS—*Measure of Compensation.*—The general rule is that when improvements are erected on the land of another under circumstances that would entitle the party making the improvements to recover compensation, the measure of such compensation is governed by the benefit accruing to the owner of the land from the improvements erected thereon, and not by the cost of the improvements or the expenditures made.

11.  EQUITY—*Specific Performance—General and Specific Relief—Compensation where Specific Performance is Denied.*—It is true that, as a general rule, if the specific relief prayed for cannot be granted, a court of equity may, if there is a prayer for general relief, go on and grant any appropriate relief warranted by the averments in the bill and the proof. And there is a certain class of cases in which, though specific execution of a contract is denied, the court will decree compensation to the proper parties. But the tendency of all the modern cases, both in England and in this country, is to prefer giving the party compensation in damages, instead of a specific performance. Wherever damages will answer the purpose of indemnity, this alternative will be preferred, as it will equally satisfy justice, and will be coincident with the provisions and in support of the authority of the statute of frauds.

12.  IMPROVEMENTS—*Knowingly Erected on Land of Another—Frauds, Statute of—Remedy at Law or in Equity.*—A court of equity will not relieve an individual from the operation of the statute of frauds, which requires an interest in lands be created by an instrument in writing, and impose an equitable lien upon land in favor of one who makes improvements thereon, knowing that the title is in another—especially where the money is expended under an express understanding with reference thereto had with the owner, but will leave the parties to the remedies, if any, which a court of law provides.

Appeal from a decree of the Circuit Court of Isle of Wight county.  Decree for complainants.  Defendants appeal.

*Reversed.*

The opinion states the case.

*Jas. H. Corbitt, Marshall Andrews* and *Johnson &
Stephens*, for the appellants.

*Chas. T. Lassiter*, for the appellees.

CHINN, J., delivered the opinion of the court.

This is a suit in equity brought by the appellees,
M. L. Shaffer and I. D. Sharove, styling themselves
partners trading as Virginia Wrecking and Salvage
Company (hereinafter referred to as complainants),
against Ivey C. Porter and Robert Porter, her husband,
who occupy the position of appellants here, and will
hereinafter be referred to as defendants.

The bill, in substance, alleges that Ivey C. Porter
owns a parcel of land adjoining Wooley's Fisheries
on the James river containing seven-twelfths of an
acre, with the riparian rights appurtenant thereto, and
her husband, Robert Porter, kept at said place a boat
for hire to persons who go there to enjoy the fishing;
that in the summer of 1922, when said Shaffer was at
Porter's place on a fishing excursion, Robert Porter
stated that he and his wife could increase their business
if they had a building suitable for the accommodation
of fishermen, and suggested to said Shaffer that if he
would put up a four room building on said land for
that purpose, they could rent the rooms and divide
the rent on a "fifty-fifty" basis; that "nothing came
of those tentative conversations," but in April of the
following year (1923) said Robert Porter, with the
consent of his wife, proposed that if Shaffer would
erect the building defendants would lease the land to
complainants for a term of twenty-five years for a

"nominal fee" of $2.00 per year, and if complainants at any time desired to sell the building defendants would take it off their hands at the cost of construction; that defendants assisted said Shaffer in selecting a site for the proposed building, and, on account of the trust and confidence reposed in defendants by complainants, they proceeded to construct a bungalow on said land containing eleven rooms, with the further understanding that Shaffer should reserve two of the rooms for his own use, and the others should be rented for the mutual benefit of the parties; that after complainants had expended the sum of $2,000.00 in constructing said building and when it was nearing completion, they prepared and presented to defendants a written lease embodying the terms of the aforesaid verbal agreement, but defendants refused to sign the same, and notified complainants to remove the building from said land.    The specific prayer of the bill is that the entire tract of land, together with the building thereon, be sold, and complainants be reimbursed out of the proceeds for the amount they had expended as aforesaid; and there is also the usual prayer for general relief.    The defendants demurred to the bill on the ground that it showed on its face that complainants had a complete and adequate remedy at law, and a court of equity was without jurisdiction to render the relief prayed for; invoked the statute of frauds by special plea; and also answered.    The answer admits that Shaffer had erected a building on Mrs. Porter's land as stated in the bill, but denies that it was erected at the solicitation or inducement of the defendants, and alleges that the proposition came from Shaffer and not from them.    Defendants also deny that they agreed to lease the premises to complainants for a term of twenty-five years or for any other term; that

they did not intend to enter into any agreement without having it reduced to writing, and insisted that this be done before the building was commenced, but complainants, notwithstanding, proceeded to erect said building without reducing his verbal proposition to writing; that they refused to sign the writing presented to them by complainants for the reason that it was not in conformity with any proposition made by Shaffer at any time, or with any verbal agreement between the parties; and that they notified complainants to remove the building from the premises because complainants refused to complete it unless defendants signed a twenty-five year lease for the premises at a rental of $2.00 per year.

The court overruled the demurrer and rejected the special plea, and, after hearing the cause upon the bill and answer, and the testimony of witnesses taken in open court, being of opinion that a partnership existed between complainants and defendants in regard to the property described in the pleadings, referred the cause to a commissioner to ascertain and report, (1) the value of the tract of land described in the pleadings, exclusive of the building erected thereon by the complainants; and (2), the value of the said building together with the material then on the land for the completion thereof.

The commissioner duly filed his report, as directed by the said decree and, on the 3rd day of November, 1924, the court entered another decree in the cause declaring the value of the land mentioned in the proceedings to be $287.00, and the value of the building erected thereon and the building material left on the premises by complainants to be $1,206,00; and ordering that the said land, building, and material be sold, and the net proceeds paid over to the complainants

and defendants "in proportion that the respective sums hereinbefore mentioned shall bear to the purchase price of the property," the residue, if any, to be paid to said Ivey C. Porter. It is from this decree that the defendants in the court below have appealed.

[1] The point is made in the petition for appeal that the court erred in holding that a partnership existed between the parties in regard to the land and building in controversy, but as this is conceded by counsel for appellees in his brief—in fact, the court's decision on this point is assigned as cross-error—no discussion of the question is necessary. It may not, however, be entirely superfluous to call attention to the case of *Burgwyn* v. *Jones, et als.,* 113 Va. 511, 75 S. E. 188, 41 L. R. A. (N. S.) 120, Ann. Cas. 1913E, 564, where it is held that a verbal agreement to become interested in and to share the profits from lands already owned by one or more of the parties at the time the partnership is formed, is an agreement for the purchase and sale of an interest in real estate, and within the statute requiring the same to be in writing.

[2] The bill in this case does not allege the existence of a partnership relation between the parties with respect to the lot of land owned by Mrs. Porter, and complainants do not base their claim to the relief asked for upon that ground, but even if they had done so, since Mrs. Porter owned the land in question at the time the alleged parol agreement was made, in the light of the above decision, the same would have been unenforceable under the statute of frauds, upon the ground that complainants were entitled to an interest in said land by virtue of a partnership created therein by said agreement.

It is contended by complainants and also alleged in the bill that they are entitled to have the land and

building in question sold and the money expended for the cost of the building returned to them, according to the prayer of the bill, because the circumstances under which the building was erected were such as to create a constructive trust in favor of complainants which a court of equity should declare and enforce.

[3] In Merwin's Equity and Equity Pleading 127, constructive trusts are thus defined:

"Constructive trusts are those which, independently of the intention of the parties, the law creates under certain circumstances, in order to prevent fraud or injustice which would otherwise ensue. These trusts are not based upon the presumed intention of the party. On the contrary, they exist contrary to that intention. As has been well said, they are trusts which are forced upon the conscience of the party by operation of law.

[4] "The distinction between resulting and constructive trusts is not one which can be adhered to with scientific accuracy. Indeed, many cases ordinarily classified as resulting trusts might with almost equal propriety be treated as constructive trusts, because the presumption of intention in these cases is a forced presumption—contrary to the actual fact— and is imputed to the party only to prevent an intended fraud. Nor is the distinction of much practical importance, whether called 'resulting' or 'constructive' trusts, they are governed by the same rules, and they are alike implied by law, in contradistinction from being created by the parties."

[5] Mr. Lile, in his Notes on Equity Jurisprudence, page 53, has this to say on the subject:

"*Distinction between the resulting and the constructive trusts.*—Note of the distinction, well stated in the text: The one is based on the *presumed intention* of the parties—and the transaction, therefore, is an

honest one between the parties; the other is forced upon the conscience of the defendant *regardless of intention*, in order to prevent a fraud on the plaintiff. Such a trust, therefore, usually suggests a *dishonest* transaction. Sometimes, however, as noted in the text, the line between the two is so close that it is difficult to distinguish the one from the other. Nor, in most instances, is the distinction of the slightest importance, as both are, in the main, governed by precisely the same principles."

And Mr. Pomeroy in his work on Equity Jurisprudence, section 1044, says this:

"An exhaustive analysis would show, I think, that all instances of constructive trusts properly so called may be referred to what equity denominates *fraud, either actual or constructive, as an essential element, and as their final source.* * * * * * This notion of fraud enters into the conception in all its possible degrees. Certain species of constructive trusts arise from *actual fraud;* many others spring from the *violation of some positive fiduciary obligation;* in all the remaining instances there is, latent perhaps, but none the less real, *the necessary element of that unconscientious conduct which equity calls constructive fraud."* (Italics supplied.)

[6] We find nothing in either the pleadings or the proofs in this case which constitutes such fraud on the part of the defendants, either actual or constructive, or the existence of any such fiduciary relation between the parties as is necessary to impress the land belonging to Mrs. Porter with a constructive trust in complainants' favor. There is no evidence whatever of any dishonesty or unconscientious conduct in regard to the transaction, or to show that the relations between the parties were anything more than

friendly, and accompanied by that degree of mutual confidence which is naturally and normally incident to such relations. On the contrary, it clearly appears from the record that complainants knew the land was owned by Mrs. Porter when they built the house thereon; that they acted voluntarily and with their eyes open as to the situation; and that the sole subject of controversy between the parties at the time this suit was instituted was as to the terms and conditions of the verbal agreement under which the house was built.

When the dispute arose in regard to the terms of the written lease proposed by complainants, and they refused to complete the building because the defendants refused to sign the writing, defendants made no claim to the house, but merely notified complainants to remove it from the premises. Taking the whole record into consideration, it is manifest that complainants have no interest in the land, either legal or equitable, except such interest as they may have acquired by virtue of the alleged parol contract, and that the failure of defendants to execute the written lease referred to in the bill amounts at the most to only a breach of said contract. We are, therefore, of the opinion that complainants are not entitled to have the land sold for their benefit on the ground that same is impressed with a constructive trust, as alleged.

[7] Nor can a court of equity specifically enforce the verbal contract set up by the bill in this case, under the prayer for general relief, upon the ground of part performance of said contract. The principles upon which a court of equity will avoid the statute of frauds upon the ground stated are well and firmly established. These principles are: (1) That the con-

tract must be clear, definite and unequivocal in all
its terms, and established by clear and satisfactory
proof; (2) the acts of part performance must refer to,
result from, or be made in pursuance of the agreement
proved; (3) the agreement must have been so far
executed that a refusal of full execution would operate
a fraud on the other party and place him in a situation
which does not lie in compensation. *Cranes Nest
Coal & Coke Co.* v. *Virginia Iron, Coal & Coke Co.*,
108 Va. 862, 62 S. E. 954, 1119; *Henley* v. *Cottrell*,
101 Va. 70, 43 S. E. 191; *Plunkett* v. *Bryant*, 101 Va.
815, 45 S. E. 742; *Wright* v. *Pucket*, 22 Gratt. (63 Va.)
370.

[8] In the case presented here the defendants deny
that they made any such parol agreement in regard
to the construction of the house as that alleged by
complainants and embraced in the lease they were
asked to sign, and the evidence on the subject is in
irreconcilable conflict as to the terms of the contract
in several material and important particulars, which
we deem it unnecessary for the purposes of this decision
to discuss.   In viewing the evidence it must at least
be said that if the minds of the parties met at all
upon all the essential terms of the alleged agreement,
the proof entirely lacks that precision and clearness
which is necessary to justify a court of equity in taking
such an agreement out of the statute of frauds and
enforcing its performance.

In *Shield* v. *Atkins*, 117 Va. 616, 85 S. E. 492, where
the bill sought to enforce an alleged express parol
trust, it was said:

" 'Equity requires a clear understanding and a
positive assent on the part of each party.   An offer
must be accepted in the terms and form submitted
or there is no valid assent, such as will create a contract
which may be specifically enforced.

" 'Where the court is unable from all the circumstances of the case to say whether the minds of the parties met upon all the essential particulars, or if they did, then cannot say exactly upon what substantial terms they agreed, or trace out any practical line where their minds met, specific performance will be refused.' *Creecy* v. *Grief*, 108 Va. 320, 61 S. E. 769."

"According to well settled principles, the contract, sought to be specifically executed, must be established by competent proofs *to be clear, definite and unequivocal in all its terms.* If the terms are uncertain, ambiguous or not made out by satisfactory proofs, a specific performance will not (as, indeed upon principle, it should not) be decreed. 2 Story's Eq. section 764. The reason is obvious enough; for a court of equity ought not to act upon conjectures; and one of the most important objects of the statute of frauds was *to* prevent the introduction of loose and indeterminate proofs of what ought to be established by solemn written contracts." *Pierce's Heirs* v. *Catron's Heirs,* 23 Gratt. (64 Va.) 595.

[9] Since, for reasons stated, the record does not present a case for either the execution of a constructive trust or the specific performance of a parol contract of lease, the question remains whether the right of complainants to compensation in damages should be enquired into in this proceeding, or whether they should be left to their remedy at law. It is argued that complainants would be barred by the statute of frauds from recovery in damages in an action at law, and unless equity grants relief they will be left without any remedy. This is a mistaken view. The general rule on the subject, as sustained by the great weight of authority, is thus stated in 29 Am. & Eng. Enc. of Law, (2nd ed.), page 836:

"Although part performance by one of the parties to a contract within the statute of frauds will not, at law, entitle such party to recover upon the contract itself, he may nevertheless recover for money paid by him, or property delivered, or services rendered, in accordance with and upon the faith of the contract. The law will raise an implied promise on the part of the other party to pay for what has been done in the way of part performance. But this right of recovery is not absolute. The plaintiff is entitled to compensation only under such circumstances as would warrant recovery in case there was no express contract; and hence it must appear that the defendant has actually received, or will receive, some benefit from the acts of part performance. It is immaterial that the plaintiff may have suffered a loss because he is unable to enforce his contract."

[10] And the general rule also is that when improvements are erected on the land of another under circumstances that would entitle the party making the improvements to recover compensation, the measure of such compensation is governed by the benefit accruing to the owner of the land from the improvements erected thereon, and not by the cost of the improvements or the expenditures made. 14 R. C. L. page 25.

[11] It is true that, as a general rule, if the specific relief prayed for cannot be granted, a court of equity may, if there is a prayer for general relief, go on and grant any appropriate relief warranted by the averments in the bill and the proof. *Woolfolk* v. *Graves*, 113 Va. 182, 69 S. E. 1039, 73 S. E. 721; *Steinman* v. *Clinchfield Corp.*, 121 Va. 611, 93 S. E. 684; *Gathright* v. *Fulton*, 122 Va. 17, 94 S. E. 191. And there is a certain class of cases in which, though specific execu-

tion of a contract is denied, the court will decree compensation to the proper parties. See *Stearns* v. *Beckham,* 31 Gratt. (72 Va.) 379. But, as said by the court in *Wright* v. *Pucket, supra:* "The tendency of all the modern cases, both in England and in this country, is to prefer giving the party compensation in damages, instead of a specific performance. Wherever damages will answer the purpose of indemnity, this alternative will be preferred, as it will equally satisfy justice, and will be coincident with the provisions and in support of the authority of the statute." And Judge Harrison, speaking for the court in *Branham* v. *Artrip,* 115 Va. 315, 79 S. E. 390, where the lower court had allowed compensation for improvements placed upon land, in a suit in equity brought by a defendant in ejectment to enjoin the said action and enforce the performance of an oral contract alleged in the bill, said: "It is not every case in which a court of equity acquires jurisdiction of a cause for a specific purpose that it may, notwithstanding that purpose has failed in whole or in part, go on to decree against any party before it. So far from it, when the remedy at law is more appropriate than in equity, or where the verdict of a jury is proper, the jurisdiction will be declined. *Walters* v. *Farmers Bank,* 76 Va. 12."

In the case of *Henley* v. *Cottrell Real Estate, Ins. & Loan Co., et als.,* 101 Va. 70, 43 S. E. 191, the lessee of a room in a building, relying upon an oral contract of lease, made valuable improvements in the room, involving the expenditure of large sums of money. An action of unlawful detainer was brought by the owner of the building for the possession of the room, and the lessee then brought a suit to enjoin the action, for specific execution of the oral lease, and for general

relief. It was held by the Supreme Court of Appeals that, aside from the fact that the evidence was hopelessly conflicting upon the essential terms of the contract—the duration of the lease and the amount of rent reserved—in no event should the contract be specifically enforced, because the acts of part performance were not such as would amount to a fraud upon the plaintiff if specific performance were denied. In the course of this opinion in that case Judge Keith said:

"Where a party has been induced by a verbal agreement to change his condition in life; to expend considerable sums of money, and to do acts whose value cannot be measured in money and compensated for in damages, equity should protect him by a specific execution of the contract; but as was well said in *Wright* v. *Pucket, supra,* there has been in this case no such part performance as cannot be compensated in damages; there was nothing in the situation of the appellant to prevent his recovering at law full indemnity for the alleged breach of the contract which he seeks specifically to execute."

[12] In the case of *Washington Market Company* v. *District of Columbia,* 172 U. S. 361, 19 S. Ct. 218, 43 L. Ed. 478, Justice White said this:

"A court of equity will not relieve an individual from the operation of the statute of frauds, which requires an interest in lands be created by an instrument in writing, and impose an equitable lien upon land in favor of one who makes improvements thereon, knowing that the title is in another, especially where the money is expended under an express understanding with reference thereto had with the owner, but will leave the parties to the remedies, if any, which a court of law provides."

Under the circumstances of this case, we consider an action at law not only more appropriate for such redress as complainants are entitled to, but a trial by jury, guided by proper instructions from the court, as necessary for the determination of the facts of the controversy, and the damages, if any, complainants are entitled to recover. The decree appealed from will, therefore, be reversed and the bill dismissed, without prejudice to appellees to proceed in a court of law to enforce such rights as they may be entitled to.

We have passed over the demurrer to the bill for the reason that the case had to be reversed on the merits, and we deemed it more expedient under the circumstances to dispose of it that way, but do not wish to be understood as expressing any conclusions as to the questions raised by said demurrer.

*Reversed.*