# Richmond

H. D. Dickenson and Cora Dickenson v. W. J. McLemore.

November 30, 1959.

Record No. 4989.

Present, Eggleston, C. J., and Buchanan, Miller, Whittle, Snead and I'Anson, JJ.

334

The opinion states the case.

*Robert T. Winston* (*Greear, Bowen, Mullins & Winston*, on brief), for the appellants.

*Vernoy B. Tate*, for the appellee.

MILLER, J., delivered the opinion of the court.

This suit, in which specific performance of an alleged parol agreement to convey real estate is sought, was instituted in the circuit court of Wise county on July 21, 1954, by W. J. McLemore, appellee, against H. D. Dickenson and Cora Dickenson, his wife, appellants, but for good cause, it was thereafter transferred to the circuit court of Scott county.

It is alleged in the bill that prior to June 14, 1952, appellee, at the instance of appellants, entered into a parol contract in which appellants promised and agreed that if McLemore would erect a dwelling for himself and wife upon a part of a small tract of land owned by the Dickensons, they would convey the lot to McLemore upon completion of the building. It is then alleged that in reliance upon the parol promise appellee expended $4,000 in the erection of a dwelling; that the Dickensons refused to convey the lot to him, but on June 14, 1952, fraudulently executed a deed which conveyed a life estate in the property to appellee's wife, Jalie Jessee McLemore, with remainder to H. D. and Cora Dickenson and that the Dickensons had been in possession of the property since the death of Jalie Jessee Mc-Lemore on January 8, 1954. Appellee prayed for specific performance of the contract; that the deed of July 14, 1952, be set aside; an accounting had of the rents and profits derived from the land by appellants, and for general relief.

In their answer the Dickensons denied that they ever promised or made any parol contract with appellee to convey the real estate to him or that they asked him to build a house on their land. They alleged that Jalie Jessee McLemore expended about $2,000 in building a house on the lot close to appellants' home because she wanted to live near her daughter, Cora Dickenson; the $2,000 was not sufficient to complete the dwelling, and H. D. Dickenson supplied materials and did a great amount of work necessary to finish the house. Thereafter, at the request of Jalie Jessee McLemore, they executed a deed con-

veying to her a life estate in the land with remainder to Cora Dickenson and H. D. Dickenson. They also alleged that they were presented a deed that had been drawn at McLemore's instance which would have conveyed the land to him and "Jalie Jessee McLemore in equal shares", but they refused to sign that deed as they were under no obligation to do so. They further charged that with no objection from McLemore and with his knowledge, they expended about $1,200 after the death of Jalie in painting, repairing and constructing two additional rooms to the dwelling.

The testimony, with exhibits, was taken and submitted in deposition form. The chancellor concluded that the evidence was sufficient to prove that the Dickensons had made a parol agreement with appellee to convey to him the lot which was worth about $100.00, and that in pursuance of the promise he had expended $4,000 in the erection of a dwelling and was entitled to specific performance. A decree was entered on August 12, 1958, that ordered H. D. and Cora Dickenson to convey to appellee the lot on which the house had been erected, described as fronting 100 feet on the County road and extending back between slightly converging lines about 99 feet and having a width of 80 feet in the rear, containing one-fifth of an acre more or less. The description is identical with that contained in the deed to Jalie Jessee McLemore of June 14, 1952, which was set aside and annulled in the decree.

Appellants' chief assignment of error is that the evidence is insufficient to prove that they ever entered into any parol contract to convey the land to McLemore. Other assignments are to the effect that the court erred by not finding that one-half of the funds expended by the McLemores on the building belonged to and were expended by Jalie Jessee McLemore.

Summarized, the evidence shows that McLemore, who is now about 81 years old, was married in 1936 to Jalie Jessee McLemore, his second wife, who was the mother of Cora Dickenson. After their marriage the McLemores moved to the State of Washington where McLemore's son, H. H. McLemore, resided. In Washington appellee engaged in operating a berry farm which his son had secured for him, and he also drew an old age pension while there and for a year or two after he returned to Virginia. While in Washington appellee's wife, Jalie, worked for some time in a fur establishment, and she also drew social security.

In 1947 the McLemores came back to Virginia for a visit, and as

Jalie was not well, they decided to stay. Appellee returned to Washington for a brief time to dispose of their furniture and personal effects. While here in Virginia in 1947 and 1948, he and his wife stayed with his sister in Wise county.

W. J. McLemore testified that in 1949 he was thinking of renting a house but H. D. and Cora Dickenson suggested that he build on their land, and Dickenson agreed to give him a deed to a 100-foot lot to be selected by appellee if he decided to and did build a house on it. No other dimensions or description of the lot are given but the next day appellee, accompanied by his wife, selected a lot with good drainage and the building was promptly begun. He said that he expended between $3,500 and $4,000 in erecting the house, and that he and his wife moved into it in October, 1949, and continued to live there until her death on January 8, 1954.

When asked where he obtained the $3,500 to $4,000 expended upon the dwelling, he answered by saying that he had earned part of it while in the State of Washington; that he was paid a pension by that State for eleven years, which at times amounted to $80 to $88 a month, and that $800 was derived from the sale of their furniture in Washington. Some of this money had been invested in government bonds which he said were payable to either his wife or him as co-owners, but he insisted that his money was used to purchase the bonds and that he alone cashed them. However, when asked to whom the bonds belonged, he said, "They were mine and hers." He testified that he did not demand a deed from the Dickensons while building the house because he relied on them to keep their promise and execute the deed. In 1950, some months after the house was completed, he had a deed drawn, which he described as having been "made to me just like it was going to a man and his wife," but said that when his wife took it to Dickenson for execution, "he wouldn't sign it." He denied that he knew anything about the deed of June 14, 1952, and said that he did not know of its existence until sometime after his wife's death.

On cross-examination he admitted that when his wife died in 1954 at the age of 72, Cora Dickenson told him that he could stay in the house as long as he wanted to, but as he "didn't want to stay long," he gave her the key to the house and left after his wife died.

Appellee's brother, J. M. McLemore, an attorney of Wise, Virginia, testified that while the house was being constructed, he had a conversation with H. D. Dickenson from whom he had purchased a load of wood, and during the course of the conversation, Dickenson

mentioned that the McLemores were building a house on some land that he owned "and that he was giving them the lot." When asked if Dickenson indicated "whether it was a life estate or fee simple," that he was going to give them in the lot, his answer was "No. He just said he was giving him a lot."

Mrs. H. J. Kiser, appellee's daughter, testified that shortly before the building was started she had a conversation with her father and stepmother and offered to let them build a house near her home but they indicated that they desired to build near the Dickensons. In this conversation McLemore and his wife stated that they had enough bonds together with which to build a house. When asked if she had any conversation with Mrs. McLemore "as to who the bonds belonged to," her answer was, "I didn't ask her, but she said they belonged to both of them, that they had worked out in Spokane, Washington, and had a little farm out there and saved their money and bought bonds together, so that if one died the other would be taken care of."

Exhibits in evidence show that on January 18, 1954, after Jalie's death, appellee executed a writing in which he agreed to accept half of the money, totaling $338, which his wife had in the Bank of Norton, and Cora Dickenson was allowed to have all the furniture in the house and all personal property. An estimated list of the personal effects showed the value to be approximately $1,027, but it appears that the Dickensons paid Jalie's funeral bill of $800. Other exhibits and communications from the U. S. Treasury Department disclose that bonds totaling about $1,600, some registered in the names of Jalie or W. J. McLemore, and some in the name of Jalie and W. J. McLemore as co-owners, and three or more in her name alone, were cashed from time to time between March 4, 1946, and November 26, 1949.

Early in June, 1952, Cora Dickenson and her mother went to the office of M. F. Steelman, a notary public, and at the request of Cora Dickenson, he drew a deed conveying Jalie Jessee McLemore a life estate in the lot, with remainder in fee to Cora and H. D. Dickenson. Steelman testified that Mrs. McLemore did not read the deed but that when it was explained to her, she did not object.

H. D. Dickenson testified that he never had any agreement with McLemore to convey the lot to him nor did he make any promise to that effect, but that he had merely permitted appellee and his wife to build on the small tract of land near the Dickenson home. He also said that he hauled part of the material that went into the building;

worked on it from time to time, and after Jalie's death, he expended about $1,200 in adding two rooms and in making repairs. Though appellee knew that he was making these improvements, he made no claim to the property until after the work was concluded in July, 1954. The deed executed to Jalie Jessee McLemore was, he said, in accordance with her request, and she had asked him and his wife not to sign the deed that McLemore had sent to them by her in 1950.

Cora Dickenson testified that they never promised to convey a lot to appellee but had only permitted the McLemores to build a house close to their home so that she would be able to look after, care for, and help the two elderly people; that they did furnish the McLemore's with dairy products, meat and lard for several years prior to her mother's death and during that time she helped her mother with most of the household work. When asked what she knew about some bonds that were cashed when the house was built, she said that her mother had some bonds, some of which were in her name and some in the name of "Jalie McLemore or W. J. McLemore" but that her mother told her that "they belonged to her individually." She described the circumstances under which the deed of June 14, 1952, was made and said that it was in conformity with her mother's wish. She quoted her mother as saying that she wanted the deed so she could obtain some insurance on the dwelling.

The evidence having been taken and presented in deposition form, the chancellor's decree is presumed to be correct and should not be disturbed if it is supported by a fair preponderance of the evidence. *Lavenstein* v. *Plummer*, 179 Va. 469, 19 S. E. 2d 696; *Ashby* v. *Dumouchelle*, 185 Va. 724, 40 S. E. 2d 493; *Stutzman* v. *C. A. Nash & Son, Inc.*, 189 Va. 438, 53 S. E. 2d 45; *Klingstein* v. *Eagle*, 193 Va. 350, 68 S. E. 2d 547; *Nash* v. *Nash*, 200 Va. 890, 108 S. E. 2d 350.

■ Under the first assignment of error appellants rely upon § 11-2, Code 1950, commonly called the statute of frauds, the pertinent parts of which follow:

"No action shall be brought in any of the following cases: * * * (6) Upon any contract for the sale of real estate, or for the lease thereof for more than a year; * * *

"Unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged thereby, or his agent; but the consideration need not be set forth or expressed in the writing,

and it may be proved (where a consideration is necessary) by other evidence."

It is conceded that no written contract was ever entered into by the appellants, but appellee insists that the evidence is sufficient to prove that H. D. and Cora Dickenson orally agreed to convey the lot of land to him and that his part performance in pursuance of the agreement entitles him to have the contract specifically enforced.

One allegation in the bill is that appellants "offered to give and convey your Complainant a small Lot of about One-fifth (1/5) of an acre if he would build a house thereon and move to the lot with his wife." However, § 55-2, Code 1950[1], is not invoked by appellants; nor do we think it applicable, for several other allegations of the bill clearly show that appellee relied upon an alleged *oral contract* to convey him the lot in consideration of his erection of a dwelling thereon; asserted that he had performed his part of the agreement and prayed for specific performance "in accordance with the agreement, contract and understanding." *Clark* v. *Atkins*, 188 Va. 668, 51 S. E. 2d 222; *Wright* v. *Dudley*, 189 Va. 448, 53 S. E. 2d 29.

The dominant question presented is whether or not the evidence proves that an oral contract was entered into by appellants to convey to appellee in fee simple the lot of land mentioned in the bill if he would build a house thereon and that in pursuance of the contract, he took possession and performed his part of the agreement so that it would be a fraud upon him not compensable in damages to deny a full execution of the alleged agreement. If a parol contract be established and the performance by appellee of his part of the agreement be proved, then he is entitled to full execution of the contract by conveyance of the parcel of real estate notwithstanding the provision of the statute of frauds. *Taylor* v. *Hopkins*, 196 Va. 571, 84 S. E. 2d 430, 8 M. J., Frauds, Statute of, § 34, p. 798. However, the parol contract sought to be enforced must be certain and definite in its terms, and the evidence relied upon to establish the contract must be clear and convincing. *Taylor* v. *Hopkins, supra; Pair* v. *Rook*, 195 Va. 196, 77 S. E. 2d 395; *Pennybacker* v. *Maupin*, 96 Va. 461, 31 S. E. 607;

---

[1] "No estate of inheritance or freehold or for a term of more than five years in land shall be conveyed unless by deed or will, nor shall any voluntary partition of lands by coparceners, having such an estate therein, be made, except by deed; nor shall any right to a conveyance of any such estate or term in land accrue to the donee of the land or those claiming under him, under a gift or promise of gift of the same not in writing, although such gift or promise be followed by possession thereunder and improvement of the land by the donee or those claiming under him."

*Wiley* v. *Colston,* 86 Va. 520, 10 S.E. 507; 101 A. L. R. 923, at 950; 8 M. J., Frauds, Statute of, § 45, p. 814.

Though acts of part performance are admissible as evidence of a contract, yet what the contract is must be shown by other evidence, and its terms must be clearly proved. 8 M. J., Frauds, Statute of, § 45, p. 814.

■ The evidence discloses that McLemore and his wife, Jalie, expended together $3,500 to $4,000 in the erection of improvements upon land owned by appellants, but neither the testimony nor the exhibits disclose to whom the greater portion of these funds belonged. Even though the evidence does establish that appellee and wife expended considerable money in erecting the house, yet the proof falls short of showing that appellants ever promised to convey a fee simple estate to McLemore or to him and his wife in any part of their land. In fact, the preponderance of the evidence and acts of both McLemore and his wife negative the idea that any such agreement was made. The testimony of both appellants is that no promise was made to convey a fee simple estate to either of the McLemores but that the house was built by appellee and his wife near the Dickenson dwelling so that Cora Dickenson could help provide for and aid the elderly couple while they occupied that dwelling. That this was McLemore's and his wife's sole purpose in building where they did and that the Dickensons made no promise or contract to convey the land to McLemore in fee is confirmed by Jalie's acceptance of a conveyance of a mere life estate and by McLemore's willingness to vacate the premises immediately after her death.

Measured by the well established principles applicable to the enforcement of a parol contract to convey real estate where part performance of the contract is relied upon to take it out of the statute of frauds, it is evident that appellee has failed to establish his right to specific performance.

■■ The evidence is in hopeless conflict as to what portion of the $3,500 to $4,000 expended in erecting the dwelling belonged to appellee and what part belonged to his wife. However, if it had disclosed with reasonable certainty what sums each invested in the building, we would not be justified in awarding a monetary judgment to appellee under the pleadings and proof. This is true not only because there is no alternative prayer for a monetary judgment for any sum or sums expended by appellee in erecting the dwelling, but also because the evidence totally fails to establish any contract, either express or im-

plied, creating the relation of debtor and creditor between appellants and appellee. *Pennybacker* v. *Maupin, supra.*

For the reasons stated the decree must be reversed and the bill dismissed.

*Reversed and final decree.*