# CIRCUIT COURT OF THE CITY OF NORFOLK

William A. Belter
and Elizabeth Belter

v.

Norfolk Properties One et al.

March 22, 2005

Case No. (Chancery) CH04-727

BY JUDGE EVERETT A. MARTIN, JR.

The plaintiffs have filed a three count amended bill of complaint arising out of their unsuccessful efforts to purchase real property owned by the original defendants. The counts are for specific performance, breach of contract, and unjust enrichment. No written contract of sale was apparently ever signed, and the defendants have raised the defense of the statute of frauds. Code of Virginia § 11-2(6). The plaintiffs seek to avoid the bar of the statute through acts of part performance.

Under the part performance exception to the statute of frauds, "the parol contract sought to be enforced must be certain and definite in its terms, and the evidence relied upon to establish the contract must be clear and convincing." *Dickenson v. McLemore*, 201 Va. 333, 339, 111 S.E.2d 416, 421 (1959). I do not believe there is clear and convincing evidence that a parol contract was ever made.

14

Mr. Belter made an unsolicited offer to purchase the property to Mr. Thornton, the owners' agent. There are three owners of the two parcels in question, and Thornton only spoke to one of them, Mr. Richard Margolious. All three owners reside some distance from Norfolk, and the other two owners, it must be said, seem uninterested in the management of the property. After Belter made his offer, Thornton discovered the true ownership of the parcels and prepared two separate contracts. Belter signed these contracts on April 14, 2003.

Sometime shortly thereafter, Thornton testified he spoke to Margolious who told him the contracts *would be* signed and that Belter should "consider it a done deal." Thornton testified he reported this to Belter. Belter, however, testified that Thornton told him the contracts *had been* signed.

Sometime shortly before the scheduled closing date of May 1, Thornton told Belter that the closing would have to be postponed because one of the owners, Lee Waldman, could not be found. That should have alerted Belter that his offer was, in fact, not a "done deal." Around May 21, Thornton learned that Waldman did not want to sell and he so informed Belter. Belter testified that Thornton said Waldman had "changed her mind," and Thornton admitted he may have told this to Belter, but Thornton testified he was never told Waldman had actually agreed to sell the property.

There is no question that Thornton engaged the attorneys who customarily represented the Margolious family to prepare deeds for closing. Thornton believed the transaction would be completed. Nor is there any question that Thornton gave Belter a key to the property, authorized Belter to clean it out, and raised no objection to Belter's making improvements to the property by repairing roof leaks, re-pointing masonry, demolishing some interior walls, and cutting openings in the exterior masonry walls for the installation of overhead doors. I believe Thornton knew of the improvements being made well before May 21. It appears the building on the property was in such poor condition that almost anything done to it would have been an improvement.

None of the three owners testified. After observing the demeanor of the witnesses, I conclude there is not clear and convincing evidence that the three owners agreed to the sale; rather I find the evidence would equally support the conclusion that Waldman never assented to the transaction. Thus I find for the defendants on the counts for specific performance and breach of contract.

The defendants did not demur to the unjust enrichment count, and Ms. Laibstain conceded in her opening statement and closing argument that the plaintiffs were entitled to some compensation for their improvements. In her closing statement, she suggested that $7,000 to $9,000 would be appropriate. Thus I need not decide whether Virginia recognizes a cause of action for unjust enrichment in these circumstances or what its elements are.

There are two measures of restitution that could be applied here: the value of the labor and materials the plaintiffs expended or the increase in the value of the property attributable to their efforts. The plaintiffs seem to contend that either measure is appropriate; the defendants argue for the latter. Neither party has offered any authority to support either measure of damages. Here, Belter was imprudent in undertaking improvements to the defendants' property before he had acquired it or at least had a written contract to purchase it; however, by giving Belter a key to the building, by telling Belter to "consider it a done deal," and by not stopping Belter from making the improvements he knew were in progress, Thornton encouraged Belter's actions that have bestowed a benefit on the defendants.

The only evidence of the value of the property before the improvements was Belter's $45,000 purchase offer and its acceptance by one of the three owners. There was no direct evidence of the property's value after the improvements. The defendants are receiving the same rent from Mr. Carter that they received from Mr. Home, and this would suggest no increase whatever in the value of the property; however, Belter's work created two usable spaces for light industrial occupancy whereas, before his efforts, the property could only be used for storage of "junk." Common experience tells us this has value to a landowner.

There is evidence of how much Belter spent to improve the property. He spent $11,577 for materials and services, $6,871 for labor, and he claims he put in about 500 hours of his own labor, which he valued at $35 per hour. I question the number of hours of his labor. He testified he began to work on the building in February, yet the earliest date on the invoices he submitted to establish his claim (Plaintiffs' Exh. 11) was an April 19 charge for "container delivery," which would appear to be the dumpster into which the debris was placed. Thereafter, there were thirteen "pick up" charges from April 21 through May 28.

The best authority I have found on the issue of the measure of damages is a *dictum* in *Porter v. Shaffer*, 147 Va. 921, 133 S.E. 614 (1926). There the real estate was owned by Mrs. Porter, and Mr. Porter conducted a fishing excursion business on the property. Shaffer had been on an excursion with Mr. Porter, and, sometime thereafter, they agreed that Shaffer would build a lodge on the property for the use and convenience of Mr. Porter's patrons. Mr. Porter and Shaffer both expected to profit from the lodge. During construction of the lodge, Shaffer attempted to have the Porters sign a lease he believed reflected their agreement, but the Porters refused to do so and demanded the removal of the almost completed lodge.

Shaffer filed a suit in equity asking that the land with improvements be sold and that he be reimbursed the amount he had expended in construction. The circuit court granted the relief sought, and the Porters appealed. The Supreme

16

Court held that Shaffer was not entitled to have a constructive trust placed upon the land or to have specific performance of a parol contract of lease. The Court then discussed whether the computation of damages should be decided in the pending suit or in an action at law. The Court held damages should be determined in an action at law and reversed the decree and dismissed the bill. In the course of its ruling it stated:

> And the general rule also is that, when improvements are erected on the land of another under circumstances that would entitle the party making the improvements to recover compensation, the measure of such compensation is governed by the benefit accruing to the owner of the land from the improvements erected thereon, and not by the cost of the improvements or the expenditures made.

147 Va. at 933, 133 S.E. at 617.

I agree the Belters should receive compensation for the benefit they have bestowed on the landowners; however, it would be pure speculation for me to determine the increase in the value of the property caused by their improvements. There is simply a failure of proof unless Ms. Laibstain's statements may be considered admissions.

I conclude her statements were neither judicial nor evidential admissions, but, rather, estimates of damages to which she believed the plaintiffs were entitled if the court ruled in their favor. In his *Law of Evidence in Virginia* (6th ed. 2003), § 18.37, Professor Friend lists pleadings, stipulations of the parties, in court testimony of a party, and admissions pursuant to Rule 4:11 as categories of judicial admissions. In § 18.43 he discusses evidential admissions by attorneys and cites *Virginia Carolina Chemical Co. v. Knight*, 106 Va. 674, 56 S.E. 725 (1907), as the leading case. There, the court held:

> While the attorney of a party to a litigation has very broad powers in the management of his case and his admissions generally bind his client in all matters relating to the progress and trial of the cause, yet to have this effect they must be distinct and formal, and made for the purpose of dispensing with the formal proof of some fact at the trial.

106 Va. at 678, 56 S.E. at 727. Ms. Laibstain's statements were not made for the purpose of dispensing with the formal proof of a fact at the trial.

I have entered a final decree dismissing the bill.